UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
THE PROCTER & GAMBLE COMPANY,        )
                                                                  )
               Plaintiff,                                    )    Civil Action No. _____
                                                                  )
        v.                                                      )
                                                                  )
ULTREO, INC.,                                            )    COMPLAINT
                                                                  )
               Defendant.                              )
------------------------------------------------------------ x

Plaintiff, The Procter & Gamble Company ("P&G"), by its attorneys, Jones Day, files this complaint against Defendant Ultreo, Inc. ("Ultreo"). In support of its causes of action, P&G states as follows:

### INTRODUCTION

1.   This action is brought under the federal Lanham Act, 15 U.S.C. § 1125 *et. seq.*, and the New York Consumer Protection Act, New York General Business Law §§ 349(a), 349(h), 350, 350(a), and 350(e). It seeks to enjoin the false and deceptive advertising campaign that is now being disseminated by Ultreo. Ultreo is advertising its "Ultrasound Toothbrush" to consumers and dental professionals, claiming that its "groundbreaking" ultrasound feature will create "bubbles" in the user's mouth "that can remove plaque bacteria."

2.   The fact of the matter, however, is that neither the ultrasound feature, nor the bubbles it creates, have any effect whatsoever on the removal of plaque bacteria in the mouth. This was recently confirmed by a clinical study conducted by P&G, which revealed that there was no difference between using the ultrasound feature of the Ultreo toothbrush and simply swishing toothpaste around one's mouth. P&G's clinical study also concluded that turning off

the Ultreo toothbrush and using it as a manual toothbrush actually removed more plaque than using the Ultreo toothbrush – with its ultrasonic waveguide – as instructed.

3.    The ultimate conclusion of P&G's study is not surprising.  For the Ultreo toothbrush (or any toothbrush for that matter) to have any effect on the removal of plaque, it is necessary that the bristles of the toothbrush physically contact the teeth.  The Ultreo advertising nevertheless claims that the ultrasound feature and the bubbles it creates will have a cleansing effect in the mouth beyond the effect caused by bristle contact, and falsely heralds this feature as the "Ultrasound difference."  In its advertising campaign, Ultreo disingenuously refers to these bubbles as "magic."

4.    The Ultreo advertising campaign is pervasive.  It is disseminated through its website, on its packaging, and in print advertisements to dental professionals – requesting recommendations to their patients.  Consumers and dental professionals are being deceived into believing that they will get cleaner teeth by spending $169 for the Ultreo ultrasound toothbrush, when, in fact, consumers would get better plaque removal results using the Ultreo toothbrush with its ultrasound feature turned off.  Additionally, P&G – a direct competitor in the power toothbrush market – is being injured by this false advertising campaign.

5.    When the Ultreo campaign first began earlier this year, P&G objected strongly to any claim that the ultrasound feature or the bubbles it created could have any effect upon the removal of plaque bacteria in actual use in the mouth.  Ultreo responded by modifying its consumer advertising to state that the "combination" of bristle action and the ultrasound technology could remove plaque bacteria.  Ultreo also claims in consumer advertising that the "sonic action bristles with power tip creates bubbles and cleans away plaque upon contact."

These claims are undeniably false given that the ultrasound technology has no effect whatsoever, whether alone or in combination, on plaque removal, as demonstrated in actual clinical studies.

6. Despite persistent requests by P&G, Ultreo has offered no clinical support for its claims that its ultrasound feature – whether alone or in combination with bristle action – has any effect upon plaque removal. Nor has Ultreo offered any clinical support for its claim that the bubbles have any capability to clean away plaque upon contact.

7. In addition, Ultreo continues to advertise its product to dental professionals and to request their referrals to patients by making the claim that the "pulsating bubbles" created by the ultrasound feature – by themselves – are able to remove plaque bacteria in the mouth. Worse, many of these same advertisements state that this claim is supported by "laboratory studies conducted at a leading research university." But the studies Ultreo refers to are not clinical studies. Ultreo relies upon *in vitro* studies that have not been replicated in actual use and, therefore, cannot be relied upon to support any claim that the "magic" bubbles actually cause plaque removal in a user's mouth. For all the above reasons, injunctive relief is therefore necessary to prevent further consumer deception and harm to P&G.

## PARTIES

8. Plaintiff P&G is an Ohio corporation with its principal place of business at 1 Procter & Gamble Plaza, Cincinnati, Ohio 45202. P&G manufactures and distributes a variety of consumer products, including its Oral-B power toothbrushes.

9. Defendant Ultreo, Inc. is a Washington corporation with its principal place of business at 9461 Willows Road NE, Suite 101, Redmond, Washington 98052. Ultreo is also the manufacturer and distributor of the Ultreo Ultrasound toothbrush.

## JURISDICTION

10. This Court has federal question jurisdiction of the Lanham Act claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the defendant conducts business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Ultreo is marketing its product in this district through print and internet advertisements and is making sales directly to consumers in this district.

## FACTS

12. P&G and Ultreo are direct competitors in the market for the sale of toothbrushes, and in particular, power toothbrushes. P&G offers a variety of power toothbrushes for sale to consumers. Ultreo offers one model, the Ultreo Ultrasound toothbrush. The Ultreo Ultrasound toothbrush is a premium item, and retails for $169.99 over the internet.

13. Ultrasound is a relatively simple echo sounding mechanism that has been known in the art since the 1880s. It was initially used in SONAR systems, and was later used as a therapeutic and diagnostic tool in the medical professions. Ultrasound techniques have been used in the dental profession since the mid-1970s, and the concept of incorporating ultrasound into power toothbrushes has been evident in the literature since the mid-1990s.

14. Ultreo recently introduced its "groundbreaking" Ultrasound toothbrush to dental professionals and the consuming public. In its advertisements, Ultreo proclaimed that its ultrasound technology was significantly different and a substantial improvement over other dental hygiene products. According to Ultreo, its bristles create bubbles that are activated by

over "4 million cycles of ultrasound energy per brushing channeled by a patented ultrasound waveguide." According to Ultreo, it is this ultrasound technology that is able to remove plaque bacteria. Ultreo's advertising campaign is built around the "Ultrasound difference."

15.  As discussed above, however, there is no clinical support for the claim that the ultrasound feature, or the bubbles that it "activates," have any cleaning effect, or any effect upon the removal of plaque bacteria in the mouth. The Ultreo toothbrush can clean teeth, and remove plaque, but only through physical contact of the brush bristles on the teeth, which is how a regular manual toothbrush removes plaque. There are no published clinical studies (studies where the brush is used by individuals in their mouths) that have detected any effect of the ultrasound feature on plaque removal. To the contrary, the clinical research demonstrates that the ultrasound feature has no effect upon plaque removal.

16.  In Ultreo's print advertisements to dental professionals and on its website, Ultreo claims that it has "laboratory support" for its claims of plaque removal. But the only support Ultreo had for this proposition was, and remains, *in vitro* studies, results that it has not replicated in the actual use by an actual user in the user's mouth.

17.  Given the lack of clinical support for Ultreo's advertising claims, P&G demanded that Ultreo discontinue any advertising claim that the ultrasound feature was capable of removing plaque bacteria. Ultreo agreed to make certain modifications, but the modifications have had little or no effect upon dispelling the notion that the ultrasound feature can remove plaque bacteria, and in certain instances, have reinforced this belief.

18.  Ultreo's present advertising campaign for its Ultreo Ultrasound toothbrush continues its false claim that the ultrasound feature can remove plaque bacteria, as set forth below:

19. In print advertising, Ultreo claims as follows:

   a. "THE DIFFERENCE IS ULTRASOUND. Ultreo takes power brushing where it's never gone before with a groundbreaking combination of ultrasound waveguide technology and precisely tuned sonic bristle action. Ultreo's bristles create bubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy channeled by a proprietary ultrasound waveguide.

   b. "As these bubbles expand and contract, they are able to remove plaque bacteria."

   c. "As shown in laboratory studies conducted at a leading university, as these bubbles expand and contract, they can remove plaque bacteria. Ultreo—a safe, yet powerful cleaning combination of ultra-sound-activated pulsating bubbles and sonic bristle action for a gentle, deep, long-lasting feeling of clean. TRY THE NEW ULTREO FOR THE ULTIMATE ULTRASOUND CLEAN."

   d. "Ultreo's combination of ultrasound waveguide technology and sonic bristle action can remove hard to reach plaque bacteria that bristle action alone can leave behind."

   e. "Bubbles are activated by the ultrasound and transformed into pulsating bubbles that can remove plaque bacteria, as shown in laboratory studies."

20. Ultreo's packaging makes the same or similar claims:

   a. "Sonic action bristles with power tip creates bubbles and cleans away plaque upon contact."

- 6 -

  b. "The difference is Ultrasound. Ultreo is the first power toothbrush to combine the forces of ultrasound waveguide technology with precisely tuned sonic bristle action. Ultreo's bristles create bubbles that are powerfully activated by nearly 4 million cycles per brushing of ultrasound energy channeled by a proprietary ultrasound waveguide."

  c. "As these bubbles expand and contract, they're able to remove plaque bacteria."

  d. "Ultreo—a safe, yet powerful cleaning combination of ultrasound-activated pulsating bubbles and sonic bristle action for a gentle, deep, long-lasting feeling of clean."

  e. "Bubbles are activated by the ultrasound and transformed into pulsating bubbles that can remove plaque bacteria."

  f. "Bubbles are activated by the ultrasound and transformed into pulsating bubbles for an incredible feeling of clean."

  g. "A deep clean. Ultreo's combination of ultrasound waveguide technology and sonic bristle action can remove hard-to-reach plaque bacteria that bristle action alone can leave behind."

  h. "A deep clean. Ultreo's combination of ultrasound waveguide technology and sonic bristle action can remove hard-to-reach plaque for an incredibly deep feeling of clean."

21. Ultreo's website (www.ultreo.com) makes the same or similar claims:

  a. "Sonic action bristles with power tip creates microbubbles and cleans away plaque upon contact."

      b.      "Ultreo takes power brushing where it's never gone before."

      c.      "Ultreo is the first power toothbrush to combine patented waveguide technology with precisely tuned sonic bristle action. Ultreo's bristles create microbubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy per brushing channeled by a patented ultrasound waveguide."

      d.      "Ultreo's combination of patented ultrasound waveguide technology and sonic bristle action can remove hard-to-reach plaque for an incredibly deep feeling of clean."

      e.      "Ultreo has been clinically proven to remove up to 95% of plaque from hard-to-reach areas in the first minute of brushing."

22.    Ultreo has also made similar claims in articles it has sponsored. For example, in the May 2007 issue of Hygienetown magazine, the following description is found: "Ultreo is the newest and most innovative power toothbrush available. It combines ultrasound waveguide technology with sonic bristle action for a deep, long-lasting feeling of clean. Ultreo's sonic action bristles create bubbles and clean on contact, while the ultrasound waveguide channels ultrasound energy from the transducer in the back of the brush head directly into the bubbles. The bubbles are activated by the ultrasound and transformed into pulsating bubbles that can remove plaque bacteria. It really is very exciting technology."

23.    In addition, the Ultreo website and the Ultreo user manual included in the Ultreo packaging contains a letter to consumers from the Ultreo Chief Executive Officer and President, Jack Gallagher. In his letter, Mr. Gallagher refers to the ultrasound waveguide as "magic." He

describes the ultrasound waveguide and then informs consumers that: "this is where the magic happens."

24. In the letter to consumers, Mr. Gallagher goes on to state as follows: "Ultreo's bristle action creates bubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy channeled by a proprietary ultrasound waveguide for an incredible, long-lasting feeling of clean."

25. The Ultreo advertisements and website also make the claim that the bubbles are created by nearly four million cycles of ultrasound energy. This too is false. The calculated number of ultrasound cycles is far less than four million.

26. Ultreo's advertising claims are false and misleading. The ultrasound feature does not reduce plaque. The ultrasound feature, in combination with the bristle action, does not reduce plaque. The ultrasound feature does not clean teeth. The ultrasound feature is not "magic." The frequency of the ultrasound is not nearly four million cycles.

27. Ultreo's false and misleading claims are material to consumers' purchasing decisions and to the recommendations of dental professionals.

28. Ultreo's misrepresentations have and likely will continue to cause P&G to suffer damages to its business in the form of lost sales, profits, and damage to its reputation and goodwill with its customers.

29. Ultreo's false and misleading advertising campaign will result in actual injury to the public. Consumers will be deceived into believing that the Ultreo toothbrush with its ultrasound component on will provide them with a better clean than if they had used the Ultreo toothbrush as they would an ordinary manual toothbrush – without the ultrasound. Not only will these consumers suffer from more plaque on their teeth, but each will have spent over $150 on an

ultrasound feature that actually causes consumers to remove less plaque, rather than more. Exacerbating the consumer injury, Ultreo's advertisements – by claiming to reduce up to 95% of plaque in 1 minute – will likely encourage consumers to use the Ultreo toothbrush for only one minute, when dental professionals commonly recommend that consumers brush for two or more minutes for effective plaque removal.

30. As a result of Ultreo's intentional, deliberate and willful misrepresentations, P&G and the public have been injured. Unless Ultreo is enjoined by this Court and ordered to retract and correct its false and misleading advertisements and statements, Ultreo's statements will continue to mislead the public and cause P&G to suffer a loss of consumer confidence, sales, profits, and goodwill, along with the cost of remedial corrective advertising, much of which loss is, and will be irreparable. The exact nature and extent of P&G's injury cannot be ascertained at this time.

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 43(a) OF THE LANHAM ACT

31. P&G repeats and realleges paragraphs 1 through 30 as if fully rewritten herein.

32. Section 43(a)(l)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits, *inter alia,* any "false or misleading description of fact, or false or misleading representation of fact which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of . . . goods, services, or commercial activities."

33. Ultreo's advertising campaign for its Ultrasound toothbrush expressly and impliedly conveys the false message to consumers that the ultrasound feature will reduce plaque, that the ultrasound feature will clean teeth, that the ultrasound feature will provide a feeling of clean, that the ultrasound feature is magic, and that the frequency of the ultrasound feature is four million cycles.

34. Ultreo's false and misleading claims have deceived, and will continue to deceive consumers and dental professionals.

35. Ultreo's false and misleading claims have appeared in commercial advertising or promotions in several states, including print advertisements in national publications and internet advertising, and are, therefore, in interstate commerce.

## SECOND CAUSE OF ACTION

## VIOLATION OF NEW YORK'S DECEPTIVE TRADE PRACTICES ACT

36. P&G repeats and realleges paragraphs 1 through 35 as if fully rewritten herein.

37. Ultreo's promotion, marketing and advertising of its product is false or misleading, deceptive and is directed at the general public and consumers, including those within the State of New York.

38. Ultreo's products have been, and continue to be, advertised and sold within the State of New York.

39. Ultreo's false advertising, marketing and promotion described hereinabove intentionally, deliberately, willfully or knowingly deceives the public and consumers, confuses or is likely to confuse the public and consumers, and materially misleads consumers as to the nature, characteristics and/or qualities of its product.

40. Consumers have reasonably relied and/or are likely to reasonably rely upon these misrepresentations in making purchasing decisions and have been injured and damaged and are likely to be further injured and damaged by Ultreo's statements and actions described hereinabove in violation of New York General Business Law §§ 349(a) and (h).

41. Ultreo's statements and actions described hereinabove have injured and damaged and will likely further injure and damage P&G in violation of New York General Business Law §§ 349(a) and (h).

42. Defendants' statements and actions described hereinabove entitle P&G to increased damages, reasonable attorneys' fees and injunctive relief under New York General Business Law § 349(h).

### THIRD CAUSE OF ACTION

### VIOLATION OF NEW YORK'S FALSE ADVERTISING STATUTE

43. P&G repeats and realleges paragraphs 1 through 42 as if fully rewritten herein.

44. Ultreo's promotion, marketing and advertising of its products is false or misleading, deceptive, and is directed at the general public and consumers, including those within the State of New York.

45. Ultreo's products have been, and continue to be, advertised and sold within the State of New York.

46. Ultreo's false advertising, marketing and promotion described hereinabove intentionally, deliberately, willfully or knowingly deceives the public and consumers, confuses or is likely to confuse the public and consumers, and materially misleads consumers as to the nature, characteristics and/or qualities of its product.

47. Consumers have reasonably relied and/or are likely to reasonably rely upon these misrepresentations in making purchase decisions and have been injured and damaged and are likely to be further injured and damaged by Defendants' statements and actions described hereinabove in violation of New York General Business Law §§ 350 and 350-a.

48. Ultreo's statements and actions described hereinabove have injured and damaged and will likely further injure and damage P&G in violation of New York General Business Law §§ 350 and 350-a.

49. Ultreo's statements and actions described hereinabove entitle P&G to increased damages, reasonable attorneys' fees and injunctive relief under New York General Business Law § 350-e

## FOURTH CAUSE OF ACTION

## VIOLATION OF COMMON LAW

50. P&G repeats and realleges paragraphs 1 through 49 as if fully rewritten herein.

51. Ultreo's conduct constitutes false advertising, unfair competition, and unfair business practices under the common law.

52. Ultreo's actions demonstrate an intentional, willful and bad faith intent to harm P&G's business, and the goodwill and reputation of P&G's power toothbrush franchise.

53. Ultreo is causing, and is likely to cause, substantial injury and damage to P&G for which there is no adequate remedy at law, and P&G is entitled to injunctive relief under common law.

54. P&G also is entitled to recover Ultreo's profits, and P&G's actual damages, costs, and attorney fees under common law.

## PRAYER FOR RELIEF

### Preliminary Relief

55. P&G respectfully requests the Court to issue a preliminary injunction to be in effect during the pendency of this action ordering Ultreo, its officers, agents, employees, and all other persons or entities acting in concert with them, to immediately cease the dissemination of any advertising, marketing, or promotional statements, whether made expressly or by implication, that the ultrasound feature of its toothbrush has any effect upon plaque removal or

teeth cleaning, or that its ultrasound feature is magic or in any way falsely describing the nature of ultrasound cycles.

### Permanent Relief

56.    P&G requests that the Court issue a permanent injunction ordering Ultreo, its officers, agents, employees and all other persons or entities acting in concert with them, to:

    a.    immediately cease the dissemination of any advertising, marketing, or promotional statements, whether made expressly or by implication, that in any way states or suggests that the ultrasound feature of Ultreo's toothbrush has any effect upon plaque removal or teeth cleaning, or that its ultrasound feature is magic or in any way falsely describing the number of ultrasound cycles;

    b.    issue appropriate corrective advertising and literature;

    c.    award P&G relief pursuant to 15 U.S.C. § 1117 and the statutory laws of New York, in particular:

        i.    all of Ultreo's profit derived from the unlawful conduct;

        ii.    all P&G's damages sustained by reason of Ultreo's unlawful acts, to be trebled in accordance with 15 U.S.C. § 1117;

        iii.    all expenditures required to correct the false and misleading statements alleged herein;

        iv.    the costs, including expenses and fees, of bringing this action; and

        v.    the attorneys fees incurred by P&G in this action;

    d.    award P&G exemplary damages as appropriate to punish for past willful conduct and to deter future willful conduct;

e.  award P&G pre-judgment and post-judgment interest on the foregoing sums; and

f.  grant P&G such other relief as the Court deems just and proper.

Dated: New York, New York
September __, 2007

_____
HAROLD K. GORDON (HG-1007)
LAURA W. SAWYER (LS-4385)
JONES DAY
222 East 41st Street
New York, NY  10017-6702
212-326-3939


JOHN B. WILLIAMS
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
202-879-3939

*Attorneys for Plaintiff*
The Procter & Gamble Company