UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

THE PROCTER & GAMBLE COMPANY,   )
         )
      Plaintiff,   )   No. 07 Civ. 8379 (RJS)
         )
      v.   )
         )   ECF Case
ULTREO, INC.,   )
      Defendant.   )

------------------------------------------------------------ x

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

HAROLD K. GORDON (HG-1007)
LAURA W. SAWYER (LS-4385)
JONES DAY
222 East 41st Street
New York, NY  10017-6702
212-326-3939

JOHN B. WILLIAMS
DANIELLE M. HOHOS
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
202-879-3939

*Attorneys for Plaintiff*
*The Procter & Gamble Company*

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STATEMENT OF FACTS ..................................................................................... 3

    A.    Ultreo's Advertising Claims ........................................................................ 3

    B.    Ultreo's Advertising Claims are False ......................................................... 5

        1.    P&G's study confirms that Ultreo's ultrasound feature does not
            remove plaque from the teeth ................................................................ 5

        2.    Philips' study also confirms that the Ultreo's ultrasound feature
            does not remove plaque from the teeth ................................................. 7

        3.    Ultreo's *in vitro* studies do not show that the ultrasound feature
            removes plaque when used by consumers ............................................. 7

        4.    Ultreo's claims that its ultrasound operates at four million cycles is
            false ..................................................................................................... 9

    C.    Ultreo's Claims Will Injure The Public and P&G ....................................... 9

        1.    Consumers are being deceived ............................................................ 10

        2.    Ultreo's false and misleading advertisements will hurt P&G in the
            marketplace ......................................................................................... 11

    D.    Attempts to Persuade Ultreo to Change the False And Misleading Claims
        Have Failed, So Court Intervention is Necessary ................................... 12

III.  ARGUMENT ....................................................................................................... 13

    A.    Preliminary Injunction Standard ................................................................ 13

    B.    Legal Standards in Lanham Act Cases ....................................................... 14

    C.    Ultreo's Claims are Expressly False .......................................................... 15

    D.    Alternatively, Ultreo's Claims Are False By Necessary Implication ......... 17

    E.    Ultreo's "Establishment Claims" Should Be Enjoined ............................... 18

    F.    Consumers Are Being Deceived By Ultreo's Advertisements ................... 19

    G.    Ultreo's False and Misleading Claims are Material to Consumers ............ 21

    H.    P&G Is Suffering and Will Continue to Suffer Irreparable Harm if Ultreo
        is Not Enjoined ....................................................................................... 22

    I.    The Public Interest Favors Injunctive Relief ............................................. 24

IV.   CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Alternative Pioneering Systems, Inc. v. Direct Innovative Products, Inc.*, 822 F. Supp. 1437
    (D. Minn. 1993) .......................................................................................................23

*America Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160 (2d Cir. 1978) .................19

*America Home Products Corp. v. Johnson & Johnson*, 654 F. Supp. 568 (S.D.N.Y. 1987) ........13

*Castrol Inc. v. Pennzoil Co.*, 987 F.3d 939 (3d Cir. 1993) ....................................................17, 18

*Castrol Inc v Quaker State Corp.*, 977 F.2d 57 (2d Cir. 1992) .......................................13, 18, 19

*Church & Dwight Co. v. S.C. Johnson & Son, Inc.*, 873 F. Supp. 893 (D.N.J. 1994)..................16

*Clorox Co. P. R. v. Proctor & Gamble Commercial Co.*,
    228 F.3d 24 (1st Cir. 2000).......................................................................................17

*Coca Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312 (2d Cir. 1982)...................................23

*Coca-Cola Co. v. Tropicana Products, Inc.*, 538 F. Supp. 1091 (S.D.N.Y.), *rev'd on other
    grounds*, 690 F.2d 312 (2d Cir. 1982) .............................................................................20

*Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*  No. 81 Div. 731, 1982 WL 121559 (S.D.N.Y.
    June 9, 1982) ...........................................................................................................17

*Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115 (D. Mass. 1996) ......................18

*Glaxo Warner-Lambert OTC G.P. v. Johnson & Johnson Merck
    Consumer Pharmaceuticals*, 935 F. Supp. 327 (S.D.N.Y. 1996)......................................18

*Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186 (2d Cir. 1980)............................22, 24

*L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258 (2d Cir. 1996) ...................13

*McNeil-P.P.C., Inc. v. Pfizer, Inc.*, 351 F. Supp. 2d 226 (S.D.N.Y. 2005) ............................19, 25

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544 (2d Cir. 1991)..................15, 19

*McNeilab, Inc. v. America Home Products, Corp.*, 848 F.2d 34 (2d Cir. 1988) ..........................13

*McNeilab, Inc. v. America Home Products, Corp.*, 675 F. Supp. 819 (S.D.N.Y. 1987) ..............22

*National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997) ........................21

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578 (3d Cir. 2002) ..............................................................................15, 20

*Novo Nordisk A/S v. Becton Dickinson & Co.*, 997 F. Supp. 470 (S.D.N.Y. 1998) .....................14

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 611, 618 (D.N.J. 2003) ........................................................................................................17

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232 (2d Cir. 2001) .........................................15

*Scotts Co. v. United Industrial Corp.*, 315 F.3d 264 (4th Cir. 2002) ...........................................17

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 906 F. Supp. 178 (S.D.N.Y. 1995) ........................................ passim

*Telebrands Corp. v. Wilton Industries, Inc.*, 983 F. Supp. 471 (S.D.N.Y. 1997) ........................23

*Telebrands Corp. v. Media Group*, No. 97-CIV-6768, 1997 WL 790576 (S.D.N.Y. Dec. 24, 1997) ....................................................................23

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ..............................................................................15, 17, 18, 22, 24

*UpJohn Co. v. Riahom Corp.*, 641 F. Supp. 1209 (D. Del. 1986) .................................................21

*United Industrial Corp. v. Clorox Co.*, 140 F.3d 1175 (8th Cir. 1998) ........................................23

*United States v. Premo Pharmaceuticals Laboratories, Inc.*, 511 F. Supp. 958 (D.N.J. 1981) ....16

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272 (2d Cir. 1981) .......................................19

*Virgin Enterprise Ltd., v. Nawab*, 335 F.3d 141 (2d Cir. 2003) ...................................................13

## FEDERAL STATUTES

15 U.S.C. § 1125(a) ........................................................................................................................14

## STATE STATUTES

NY Gen. Bus. Law § 349 (McKinney 2004) ...................................................................................14

NY Gen. Bus. Law § 350 (McKinney 2004) ...................................................................................14

**OTHER AUTHORITIES**

21 CFR 872.6865 ...................................................................................................21

FTC Policy Statement on Deception, 103 F.T.C. 110 (1984).......................................21

Federal Rule of Civil Procedure 65 ...................................................................... passim

Plaintiff The Procter & Gamble Company ("P&G"), pursuant to Rule 65 of the Federal

Rules of Civil Procedure, respectfully submits this memorandum in support of its motion for a

preliminary injunction to stop an on-going false and misleading advertising campaign by Ultreo,

Inc. ("Ultreo").

## I.    PRELIMINARY STATEMENT

This action seeks to enjoin the false and deceptive advertising campaign that is now being

disseminated by Ultreo.  Ultreo is advertising its "Ultrasound Toothbrush" to consumers and

dental professionals, claiming that its "groundbreaking" ultrasound feature will create "bubbles"

in the user's mouth "that can remove plaque bacteria" and will provide "optimal plaque

removal."  The fact of the matter, however, is that neither the ultrasound feature, nor the bubbles

it activates, removes plaque when used by consumers.  This was recently confirmed by clinical

study conducted by P&G, soon to be published by *The American Journal of Dentistry*, which

revealed that there was no meaningful difference between using the ultrasound feature of the

Ultreo toothbrush and simply swishing toothpaste around one's mouth.  This study also

concluded that turning off the Ultreo toothbrush and using it as a manual toothbrush actually

removed more plaque than using the Ultreo toothbrush – with its ultrasound waveguide

operational – as instructed.  Another competitor in the power toothbrush market, Philips Oral

Healthcare, Inc. ("Philips"), recently released an abstract containing similar results.

Despite persistent requests by P&G, Ultreo has offered no <u>clinical</u> support for its claims

that its ultrasound feature – whether alone or in combination with bristle action – removes plaque.

Nor has Ultreo offered any clinical support for its claim that the bubbles have any capability to

clean away plaque in the mouth.  In some of Ultreo's advertisements, Ultreo states that its claims

are supported by "laboratory studies conducted at a leading research university."  But the studies upon which Ultreo relies are *in vitro* studies (test-tube studies) that have not been replicated in actual use.  Courts, when presented with similar advertising claims, have consistently concluded that *in vitro* tests do not provide sufficient support for such claims to consumers.  Moreover, courts have found these consumer messages to be literally false when *in vivo* (actual use studies) tests yield contrary results.  Consequently, Ultreo's claims that the ultrasound and its "magic" bubbles actually cause plaque removal in a user's mouth are false and should be enjoined.

Not only are Ultreo's advertising claims expressly false, but consumers are being deceived into believing that the ultrasound technology, and the bubbles Ultreo claims it activates, are going to be able to clean their teeth alone (*i.e.*, without any bristle action).  In a recent consumer survey, seventy-two percent (72%) of the consumers concluded after viewing Ultreo's advertisements that the ultrasound <u>alone</u> would clean their teeth, or clean their teeth better.  Forty-eight percent (48%) of the consumers believed that ultrasound alone would clean their teeth better than without ultrasound.

Additionally, P&G – a direct competitor in the power toothbrush market – is being injured by this false advertising campaign.  Eighty-six (86%) of the consumers in the recent survey expressed interest in purchasing an Ultreo toothbrush after viewing the false and misleading claims regarding Ultreo's ultrasound technology.  These consumers have been deceived into believing that they will get cleaner teeth by spending $169 for the Ultreo ultrasound toothbrush, when, in fact, individuals would get better plaque removal results using the Ultreo toothbrush with its ultrasound feature turned off.   Ultreo's false and deceptive advertising campaign harms the public, specifically their oral hygiene, because they falsely believe that Ultreo's ultrasound feature will provide an actual plaque removal benefit in their

mouths. Not only will consumers be injured, but P&G will be injured as well. In another study, P&G determined that over 50% of those consumers likely to purchase the Ultreo toothbrush would have otherwise purchased a P&G product. Injunctive relief is necessary to prevent further consumer deception and harm to P&G.

## II.    STATEMENT OF FACTS

### A.    Ultreo's Advertising Claims

Ultreo makes numerous claims about its ultrasound toothbrush, some of which have changed slightly over time, but all of which communicate the same basic message: the ultrasound technology in the Ultreo toothbrush, and the bubbles it claims to activate, removes plaque in the mouth. Advertisements for the Ultreo toothbrush have appeared in consumer catalogs, professional magazines, articles and on its webpage. These advertisements, as well as Ultreo's packaging, are making claims about the Ultreo toothbrush that are false and deceptive.

Ultreo's advertisements highlight Ultreo's ability to clean with ultrasound technology and the bubbles activated by that technology. The claims Ultreo has made, or is currently making, include:

- "As the bubbles expand and contract, they are able to remove plaque bacteria."

- "Bubbles are activated by the ultrasound and transformed into pulsating bubbles that can remove plaque bacteria."

- "The sonic bristles create bubbles that pulsate at an exact ultrasonic frequency for optimal plaque removal."

- "Bubbles are activated by the ultrasound and transformed into pulsating bubbles for an incredible feeling of clean."

- "As shown in laboratory studies conducted at a leading university, as these bubbles expand and contract, they can remove plaque bacteria."

- "Sonic action bristles with power tip creates bubbles and cleans away plaque upon contact."

- "A deep clean.  Ultreo's combination of ultrasound waveguide technology and sonic bristle action can remove hard-to-reach plaque that bristle action alone can leave behind."

- "Ultreo—a safe, yet powerful cleaning combination of ultrasound-activated pulsating bubbles and sonic bristle action for a gentle, deep, long-lasting feeling of clean."

- "A deep clean.  Ultreo's combination of ultrasound waveguide technology and sonic bristle action can remove hard-to-reach plaque for an incredibly deep feeling of clean."

- "Ultreo takes power brushing where it's never gone before."

- "Ultreo has been clinically proven to remove up to 95% of plaque from hard-to-reach areas in the first minute of brushing."

*See generally* Affidavit of Wayne Randall ("Randall Aff.") at ¶¶11-22.[1]  Ultreo also makes similar claims in articles it sponsors.  *See id.* at ¶17 and Ex. G.

In addition, the Ultreo user manual included in the Ultreo package and on the Ultreo website contains a letter to consumers from the Ultreo Chief Executive Officer and President, Jack Gallagher.  In his letter, Mr. Gallagher refers to the ultrasound waveguide as "magic."  He describes the ultrasound waveguide and then informs consumers that: "this is where the magic happens."  *See* Randall Aff.¶20 and Ex. M.

In the letter to consumers, Mr. Gallagher goes on to state as follows: "Ultreo's bristle action creates bubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy channeled by a proprietary ultrasound waveguide for an incredible, long lasting feeling of clean."  Randall Aff., Ex. M.  Mr. Gallagher's claim about the number of cycles is found throughout Ultreo's advertising campaign.  Print ads and packaging proclaim: "Ultreo takes power brushing where it's never gone before with a groundbreaking combination of ultrasound

---

[1]    For the convenience of the Court, a summary of Ultreo's advertising claims can be found in Appendix A, appended hereto.

waveguide technology and precisely tuned sonic bristle action. Ultreo's bristles create bubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy channeled by a proprietary ultrasound waveguide." *Id*. at ¶¶11, 14, 16.

**B.    Ultreo's Advertising Claims are False**

Ultreo's advertising claims are false. There is no clinical support for the claim that the ultrasound feature, or the bubbles that it activates, removes plaque bacteria <u>in the mouth</u>. To the contrary, the clinical research demonstrates that the ultrasound feature does not remove plaque in the mouth. The Ultreo toothbrush can clean teeth and remove plaque, but only through physical contact of the brush bristles on teeth.

**1.    P&G's study confirms that Ultreo's ultrasound technology does not remove plaque from the teeth.**

Plaque is a sticky substance that is made up of a bacterial biofilm, which can be harmful if left on the teeth. Plaque must be removed on a regular basis in order for teeth and gums to remain healthy. To date, the only clinically proven way to remove plaque from the teeth with a toothbrush is by mechanically disrupting the plaque found on the teeth, when the bristles of a toothbrush come into contact with the teeth. *See* Affidavit of Aaron Biesbrock ("Biesbrock Aff.") ¶7.

In light of Ultreo's claims that the ultrasound feature removes plaque bacteria and that it removes "hard-to-reach plaque bacteria that bristle action alone can leave behind," P&G conducted a study with actual users of the toothbrush, an *in vivo* study, to evaluate the effectiveness of plaque removal of the Ultreo toothbrush. Biesbrock Aff. ¶19. The study has been selected for publication in the peer-reviewed, scientific journal, *American Journal of Dentistry*. Thirty-one adults participated in the study. The study was a four-treatment, eight-

period crossover clinical study, meaning that four different treatments were tested by the subjects

eight times.  The four treatments were:

- o brushing with the Ultreo toothbrush for two minutes in accordance with the manufacturer's directions;

- o brushing with the Ultreo toothbrush for two minutes with the power turned off, as if it were a manual toothbrush;

- o placing the Ultreo toothbrush, with the power turned on, approximately 3 millimeters from the surface of the teeth, so that the bristles do not come into contact with the teeth for two minutes; and

- o swishing for one minute with a dentifrice slurry (comprised of 1 part toothpaste to 3 parts water) and did not use a toothbrush.

Biesbrock Aff. ¶20.

According to this study, the most effective way of removing plaque with the Ultreo

toothbrush was to use it manually—with the ultrasound turned off.  The next best method was

using the Ultreo toothbrush in accordance with the manufacturer's instructions.  There was no

significant difference in plaque removal between holding the Ultreo toothbrush approximately

three millimeters from the teeth with the ultrasound on (and with toothpaste on the brush) and

merely swishing a toothpaste slurry around the mouth without brushing.  Biesbrock Aff. ¶¶31, 35.

P&G's *in vivo* study supports the conclusion that the Ultreo toothbrush only is effective

in removing plaque when the toothbrush bristles contact the teeth.  Biesbrock Aff. ¶35.  This is

contrary to Ultreo's claims, such as "bubbles are activated by the ultrasound and transformed

into pulsating bubbles that can remove plaque bacteria."  Interestingly, the toothbrush removed

statistically significantly more plaque with power turned off and used like a manual toothbrush

than it did with power turned on.  *Id.*  This is inconsistent with Ultreo's combination claims that

"Ultreo's combination of ultrasound waveguide technology and sonic bristle action can remove

hard-to-reach plaque bacteria that bristle action alone can leave behind."  P&G's study

undermines any claim that the ultrasound mechanism provides any plaque removal benefit in the mouth beyond or in addition to the mechanical cleaning done by the bristles.  Biesbrock Aff. ¶35.

> **2. Philips' study also confirms that the Ultreo's ultrasound feature does not remove plaque from the teeth.**

In addition to the tests conducted by P&G showing that Ultreo's ultrasound feature does not remove plaque in the mouth, Philips, the maker of the Sonicare® toothbrush, also has conducted its own *in vivo* clinical study to determine the plaque removal of Sonicare FlexCare, Ultreo and Ultreo with the ultrasound function disabled.  Biesbrock Aff. ¶36.  Philips reported the following conclusion for the study:  "Sonicare FlexCare was found to remove significantly more plaque than Ultreo power toothbrushes with and without the ultrasonic function when assessed over the entire denition (overall) as well as in hard to reach areas."  Biesbrock Aff., Ex. S.  According to the abstract available on the Sonicare® website, the Ultreo toothbrush with the ultrasound feature enabled removed no more plaque than Ultreo with ultrasound disabled.  Biesbrock Aff. ¶36.

> **3. Ultreo's in vitro studies do not show that the ultrasound feature removes plaque when used by consumers.**

Ultreo is apparently trying to base its "magic" ultrasound claims upon *in vitro* studies conducted in petri dishes, and not in actual use by an actual user.  Ultreo has not conducted an *in vivo* study that demonstrates the effectiveness of the ultrasound waveguide in removing plaque in areas where the bristles do not come into contact with the teeth.  Biesbrock Aff. ¶11.

The *in vitro* study relied upon by Ultreo to show the effect of the ultrasound involved a single type of plaque bacteria that was grown on hydroxyapatite discs and frosted glass slides.  Biesbrock Aff. ¶9.  The discs were positioned three millimeters from the ultrasound waveguide.  The frosted glass slides contained grooves, the surfaces of which were directly brushed with the Ultreo bristle tips, while the ultrasound wave guide was operating.  This *in vitro* study was

conducted in a submerged environment, containing toothpaste. *Id.* According to abstracts made available by Ultreo in connection with its study, Ultreo removed significantly more bacteria from the discs without bristle contact than other power toothbrushes. *Id.* at ¶10. Ultreo also claims that the study demonstrated that Ultreo's combined sonic and ultrasonic activity removed the bacteria from the grooved glass slides. *Id.*

*In vitro* studies, however, which are not conducted by examining actual use of the toothbrush by consumers, are not accurate predictors of how a toothbrush will perform in the mouth. *See* Biesbrock Aff. ¶ 12 (discussing numerous studies showing the failure to replicate *in vitro* tests of sonic toothbrushes in the mouth). As a general matter, *in vitro* studies have a number of components that are inconsistent with the clinical environment of the mouth. Biesbrock Aff. ¶13. Specifically, several aspects of Ultreo's *in vitro* study are inconsistent with an actual mouth. Ultreo tested only a single type of bacteria, which cannot mimic the behavior of complex plaque bacteria that is naturally found in the human mouth. *Id.* at ¶37. It is extremely difficult to predict how naturally-occurring plaque will react based upon knowledge gleaned from a test involving a single type of bacteria. Biesbrock Aff. ¶¶14-15. Additionally, it appears that Ultreo's *in vitro* study was conducted with the toothbrush head fully submerged in water. *Id.* at ¶37. However, an individual only has a small amount of saliva in his or her mouth at any given time. *Id.* at ¶17. The ultrasound technology will perform differently when submerged, than when it is in the mouth.

Despite these shortcomings, Ultreo relies on such studies to market its toothbrush to the public, claiming that the bubbles activated by the ultrasound technology "remove plaque bacteria." Ultreo fails to mention, however, that there is no evidence that the ultrasound

technology or the bubbles it activates actually remove plaque bacteria <u>in the mouth</u>, rather than in the laboratory where the brush was completely submerged in water.

### 4.   Ultreo's claims that its ultrasound operates at four million cycles is false.

Ultreo claims throughout its advertisements that its ultrasound operates at four million cycles.  Some of these advertisements specify that it is four million cycles "per brushing," while other advertisements are silent.  Ultreo's data reveals that its ultrasound feature cycles at 324,000 Hz, which means that the toothbrush must be operated for over two minutes to reach four million cycles.  Biesbrock Aff. ¶38-39.  Without specifying "per brushing," Ultreo's four million claim is false.

### C.   Ultreo's Claims Will Injure The Public and P&G

Ultreo's false advertising campaign injures both the public and P&G.  Consumers, believing that the Ultreo toothbrush with its ultrasound component provides them with an "ultrasound" clean, are spending over $150 for this toothbrush that removes plaque in the same manner as does an ordinary toothbrush – with bristle contact on teeth.  Even with limited release, Ultreo is already succeeding in the market.  According to Ultreo's President, Mr. Jack Gallagher, "sales have been great."  He continues to explain that "Our biggest challenge is getting production up to demand."  Randall Aff., Ex. B.  Beginning in the fall of 2007, Ultreo will be available at The Sharper Image, Frontgate, SkyMall, Hammacher, Amazon.com and Bloomingdales.  *Id.*, Exs. A, N, O.

Consumers are not only being deceived, but their oral health will likely suffer as a result of believing Ultreo's advertisements and switching to Ultreo.  Consumers are being misled into believing that they do not need to actually touch the Ultreo toothbrush to their teeth to clean them.  For example, an individual submitting a recent review on Amazon.com made the following comment:

> I have been using Electric tooth brushes for 22 years, and try every new one on market. **This one cleans your teeth, and gums without touching them**. Your teeth feel clean and your gums get over soreness, from plaque and irritation from brushes. The "ultrasonic waveguide" does most of the work, and not the small brushes on the head. . . .

Randall Aff. ¶24 and Ex. Q (emphasis added). The detrimental impact to users not actually touching the teeth is magnified by other advertising claims being made by Ultreo that its toothbrush removes 95% of plaque after only one minute of use, which could encourage consumers to brush for only one minute. Overall, it is likely that consumers will modify their brushing habits as a result of Ultreo's advertisements in a way that will only hurt their dental health.

### 1. Consumers are being deceived.

P&G engaged $D^2$ Research and Thomas Dupont to conduct consumer research to determine the messages that consumers take away from Ultreo's advertising claims. *See* Declaration of Thomas D. Dupont ("Dupont Decl."), dated October 9, 2007 at ¶7. Over 200 people were presented images of Ultreo's website and asked a series of open-ended questions about the statements found on the website. The survey clearly reveals that consumers believe – as a result of the advertising claims – that the ultrasound technology, or the bubbles activated by the ultrasound, are themselves alone able to clean one's teeth. A copy of the consumer results can be found as Exhibit A attached to the Declaration of Thomas Dupont. Seventy-five percent (75%) of respondents believed that they would obtain a benefit from the ultrasound technology used in the Ultreo toothbrush. Dupont Decl. Ex. A at 9. Seventy-two percent (72%) of respondents concluded after viewing Ultreo's advertisements that the ultrasound <u>alone</u> would clean their teeth, or clean their teeth better. *Id.* Forty-eight percent (48%) of the consumers took away a comparative claim – that ultrasound alone would clean their teeth better than without

ultrasound. *Id.* Finally, thirty-seven percent (37%) of the consumers who participated in this survey took away the very specific message that the ultrasound would remove plaque, stains and/or tartar. *Id.* The survey results show that a significant number of consumers take away from Ultreo's advertising that ultrasound provides an independent and incremental cleaning benefit above and beyond bristle contact on teeth.

### 2. Ultreo's false and misleading advertisements will hurt P&G in the marketplace.

The premium power toothbrush market is extremely competitive and advertising can have an immediate and substantial impact on the purchasing public. Randall Aff. ¶¶6, 10. Historically, the introduction of a new product in this market combined with aggressive advertising claims can quickly capture a large market share. *Id.* ¶10. As history shows, it is likely that P&G's sales will be harmed as a result of Ultreo's false and misleading advertising campaign.

In addition, quantitative consumer tests have demonstrated that people will purchase the Ultreo toothbrush as a result of the advertising claims. In the consumer survey conducted by Dr. Dupont, eighty-six percent (86%) of the consumers tested said they were likely to purchase the Ultreo toothbrush as a result of the false and misleading claims being made. Dupont Decl., Ex. A at 10. Additionally, P&G engaged Coulter-Renken to perform an analysis to determine how the introduction of Ultreo will impact sales of its existing products. Randall Aff. ¶23. Data was collected from over three thousand consumers via an internet survey. The consumers were asked to state their preferences between various toothbrushes. This analysis revealed that Ultreo is expected to launch with the sale of 66,000 toothbrushes, and over 50% of these purchases will come from customers who otherwise would have purchased an Oral-B high-end toothbrush. *Id.* and Ex. P.

P&G's research is consistent with Ultreo's own stated intentions.  The President and Chief Executive Officer of Ultreo, Jack Gallagher, has proclaimed that Ultreo is the first major innovation in power toothbrushes in fifteen years.  *See* Randall Aff. Exs. A, B.  Mr. Gallagher's short-term goal is for Ultreo to corner 10% of the power toothbrush market, which, according to Mr. Gallagher, is worth $100 million.  *See id*.

> ### D.   Attempts to Persuade Ultreo to Change the False And Misleading Claims Have Failed, So Court Intervention is Necessary

Realizing that Ultreo's advertising contained false and misleading claims and that such claims could harm P&G's sales, P&G, through its counsel, reached out to Ultreo and requested changes in its advertising.  *See generally* Affidavit of John B. Williams ("Williams Aff.") ¶¶2-13.  P&G began corresponding with Ultreo in March of 2007, and at that time, it requested that Ultreo refrain from making claims that falsely suggest that Ultreo creates bubbles in the user's mouth that are capable of removing plaque.  P&G also requested that Ultreo provide P&G with the studies that supported the claims about plaque removal, should those claims be true.  *Id*. at ¶¶2-4 and Ex. A.

Ultreo's response to this first letter maintained its position that claims related to the ultrasound technology were supported by "reliable scientific evidence."  Despite this claim, Ultreo agreed to adjust its advertising to address P&G's concerns.  Williams Aff. ¶5 and Ex. B.  However, Ultreo did not provide P&G with any of this "reliable scientific evidence" and still has not provided this evidence to P&G.  *Id.* at ¶¶2-13.  Moreover, subsequent correspondence between counsel resulted in only minor changes to the advertising campaign.  *Id.* at ¶7.  Ultreo continues to make statements in its advertisements that expressly and impliedly claim that the ultrasound feature or the bubbles will clean teeth, or remove plaque and bacteria, in the mouth.

The discussions between counsel ended with Ultreo stating that it would "not make any further changes in response to Procter and Gamble's demands." *Id*. at ¶11.

Without the intervention of this Court, Ultreo will continue to make such claims harming both the consumers who believe they that they need not touch the bristles to their teeth to remove plaque, or that they need to use the Ultreo toothbrush for only one minute to remove 95% of plaque.

## III.  ARGUMENT

### A.  Preliminary Injunction Standard

A party seeking a preliminary injunction must demonstrate "either a likelihood that it will succeed on the merits of its claim, or a serious question going to the merits and a balance of hardships tipping decidedly in its favor." *Virgin Enters. Ltd., v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003); *see also L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 261-62 (2d Cir. 1996); *Castrol Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir. 1992); *McNeilab, Inc. v. Am. Home Prod. Corp.,* 848 F.2d 34, 27 (2d Cir. 1988).  In addition, the moving party must show a "probability of irreparable harm in the absence of injunctive relief." *Virgin Enters.,* 335 F.3d at 145; *see also McNeilab*, 848 F.2d at 37.  In assessing whether this test is met, it is appropriate for the Court to consider the strong public interest in preventing the dissemination of false or misleading advertising.  *See Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987).

The standards for preliminary relief are easily satisfied here.  Ultreo's claims are false and consumers are being misled.  P&G's *in vivo* clinical study confirms that Ultreo's *in vitro* study cannot be relied upon to claim that Ultreo's ultrasound technology removes plaque <u>in the mouth</u>.  Indeed, P&G's *in vivo* study reveals the ultrasound technology does not perform as advertised in the mouth.  While the Ultreo ultrasound toothbrush may remove a single type of

plaque bacteria in a submerged "petri dish" environment, the reality is that consumers will not have the same experience in their mouth.  Moreover, P&G has suffered and continues to suffer irreparable harm from the loss of goodwill and sales as a result of the claims in Ultreo's advertisements.  Finally, the public interest in protecting consumers from false advertising is particularly compelling in a case, such as this one, that involves false and misleading claims that will adversely affect the health of the public.

**B.    Legal Standards in Lanham Act Cases**

P&G is asserting claims against Ultreo alleging that ads for its "Ultrasound Toothbrush" violate the Lanham Act and Sections 349 and 350 of the New York General Business Law. Section 43(a) of the Lanham Act prohibits false or deceptive advertising in interstate commerce. 15 U.S.C. § 1125(a).  Section 43(a) provides in relevant part that:

> (a)(1) Any person who, in or in connection with any goods or services, . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

*Id.*  The relevant state laws are similar.  *See* N.Y. GEN. BUS. LAW § 349(a) (McKinney 2004) (prohibiting "[d]eceptive acts or practices in the conduct of any business"); N.Y. GEN. BUS. LAW § 350 (McKinney 2004) (prohibiting "[f]alse advertising in the conduct of any business.")  The Court's "analysis under the New York General Business Law is the same as under the Lanham Act."  *Novo Nordisk A/S v. Becton Dickinson & Co.*, 997 F. Supp. 470, 472 n.1 (S.D.N.Y. 1998).

The Lanham Act prohibits three types of advertising claims:

o   False express claims – advertising that is false on its face;

- o claims that are false by necessary implication – a literally false message that when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated; and

- o impliedly false claims – claims that are literally true, but are likely to mislead and confuse consumers.

### C. Ultreo's Claims are Expressly False

The Lanham Act prohibits advertising that is either actually false or that may be literally true but is misleading or confusing to consumers. *See, e.g.*, *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001). When analyzing whether an advertisement or product name is literally false, "a court must determine, first, the unambiguous claims made by the advertisement or product name, and second, whether those claims are false." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). When a claim is expressly false, consumer harm is presumed, and the court may grant relief "'without reference to the advertisement's impact on the buying public.'" *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 906 F. Supp. 178, 181 (S.D.N.Y. 1995) (Baer, J.) (quoting *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991)), *aff'd*, 100 F.3d 943 (2d Cir. 1996); *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). There is no need to examine the consumer's reactions to literal falsehood because the best support for the argument that the statement is false is "comparing the statement itself with the reality it purports to describe." *DIRECTV*, 497 F.3d at 153 (internal quotation marks omitted).

Ultreo's advertising campaign makes the following expressly false claims:

- "THE DIFFERENCE IS ULTRASOUND. Ultreo takes power brushing where it's never gone before with a groundbreaking combination of ultrasound waveguide technology and precisely tuned sonic bristle action. Ultreo's bristles create bubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy channeled by a proprietary ultrasound waveguide."

- "As these bubbles expand and contract, they are able to remove plaque bacteria."

- "As shown in laboratory studies conducted at a leading university, as these bubbles expand and contract, they can remove plaque bacteria. Ultreo—a safe, yet powerful cleaning combination of ultra-sound-activated pulsating bubbles and sonic bristle action for a gentle, deep, long-lasting feeling of clean. TRY THE NEW ULTREO FOR THE ULTIMATE ULTRASOUND CLEAN."

- "Bubbles are activated by the ultrasound and transformed into pulsating bubbles that can remove plaque bacteria, as shown in laboratory studies."

- "Sonic action bristles with power tip creates bubbles and cleans away plaque upon contact."

These claims are literally false. Ultreo's ultrasound technology does not increase the amount of plaque bacteria the toothbrush removes from the mouth. In fact, P&G's *in vivo* study showed that more plaque is removed when the Ultreo ultrasound toothbrush is used manually *without turning the ultrasound on. See, supra*, pg. 6. P&G's clinical study showed that the ultrasound feature did not work any better than merely swishing toothpaste around in one's mouth without brushing. Biesbrock Aff. ¶35.

Indeed, Ultreo does not have any clinical evidence to support its claim that the ultrasound technology actually removes plaque bacteria in a consumer's mouth. All Ultreo has presented is a study that was conducted in a laboratory environment that does not even begin to approach the conditions of the human mouth. Claims supported only by laboratory results that cannot be replicated in actual conditions are false. *SmithKline*, 906 F. Supp. at 188 (finding a claim that TUMS ULTRA began to work "within seconds" was false because although *in vitro* pH studies that TUMS had an almost immediate effect on pH levels of gastric acid, tests conducted in actual stomach conditions proved that TUMS took much longer to raise pH levels). *See also Church & Dwight Co. v. S.C. Johnson & Son, Inc.*, 873 F. Supp. 893, 904-05 (D.N.J. 1994) (holding that a baking soda manufacturer's claims about odor absorption literally false where in *in vitro* tests could not be correlated to *in vivo* tests); *United States v. Premo Pharm. Labs. Inc.*, 511 F. Supp.

-16-

958, 985-86 (D.N.J. 1981) (explaining in a case alleging violations of the Federal Food, Drug, and Cosmetic Act "[i]n vitro tests do not provide a basis for conclusions . . . unless a correlation has been made between the results of those studies and the results of an *in vivo* study"). Since Ultreo is aware that these claims are completely unsubstantiated, they should be determined to be false, even without considering the clinical studies. *See Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 611, 618 (D.N.J. 2003) ("a court may find a completely unsubstantiated claim by the [non-movant] is *per se* false without additional evidence") (internal quotation marks omitted).

Additionally, Ultreo's claim that its "bristles create bubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy . . ." is expressly false. Ultreo's own data confirms that the Ultreo toothbrush must be operated for over two minutes to reach four million cycles. Biesbrock Aff. ¶38-39. Consequently, Ultreo should be enjoined from making the false claim that its ultrasound operates at four million cycles, without also specifying "per brushing."

### D.    Alternatively, Ultreo's Claims Are False By Necessary Implication

Alternatively, Ultreo's advertising claims are false by necessary implication. Although an advertisement may be literally true, "a Court may deem it false by necessary implication." *SmithKline*, 906 F. Supp. at 181 (citing *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, No. 81 Div. 731, 1982 WL 121559, at *2 (S.D.N.Y. June 9, 1982)). In this instance, the "necessary implication" of the advertisements is that the ultrasound technology contributes to the removal of plaque in the mouth (as opposed to in an artificial laboratory setting).

The doctrine of false by necessary implication has been widely recognized. *See, e.g., DIRECTV*, 497 F.3d at 158; *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 274 (4th Cir. 2002); *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34-35 (1st Cir. 2000); *Castrol Inc. v. Pennzoil Co.*, 987 F.3d 939, 946-47 (3d Cir. 1993). When evaluating

advertisements under the doctrine of false by necessary implication, a district "must analyze the message conveyed in full context." *Pennzoil Co.,* 987 F.2d at 946.  Once the advertisement is examined and it is determined that the claim is unambiguous in the message it conveys, the same presumption that is applied to expressly false claims will be applied where the claims are false by necessary implication. *DIRECTV*, 497 F.3d at 158.  If "the words or images, considered in context, necessarily imply a false message, the advertisement is literally false and no extrinsic evidence of consumer confusion is required." *Id.*

Ultreo's express claims that the ultrasound feature creates a feeling of clean necessarily imply that the ultrasound feature actually cleans -- by removing plaque in the mouth.  As discussed above, *supra*, pp. 5-9, there are no clinical studies that support the claim that ultrasound technology removes plaque in the mouth.  Any evidence supporting the theory that ultrasound technology "cleans" teeth by removing plaque is based on laboratory results alone that do not correlate to studies done in the mouth.  Thus, these advertisements are false by necessary implication, and the Court should enjoin Ultreo from making such claims.

### E.  Ultreo's "Establishment Claims" Should Be Enjoined

Some of Ultreo's claims are "establishment" claims for purposes of the Lanham Act.  An establishment claim is a statement to the effect that scientific tests establish that a product works. *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 121 (D. Mass. 1996). Establishment claims have been found "[w]hen the ad relies on scientific studies, whether implicitly by making a claim while showing a graph or diagram, or explicitly, by stating, for example, 'that studies show.'" *Glaxo Warner-Lambert OTC G.P v. Johnson & Johnson Merck Consumer Pharms.*, 935 F. Supp. 327, 329 (S.D.N.Y. 1996); *see also Castrol Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992).  When a defendant makes an establishment claim, the plaintiff needs to only show either (i) "that the tests were not sufficiently reliable to permit

[the] conclusion" for which they are cited, or (ii) "that the tests, even if reliable, do not establish the proposition asserted by the defendant" and are thus "simply irrelevant." *Castrol Inc.*, 977 F.2d at 63; *see also McNeil-P.C.C.*, 938 F.2d at 1549 (citation omitted).

A number of Ultreo's claims are establishment claims under the Lanham Act. For example, the Ultreo advertisement in the Frontgate catalog claims that: "Independent research studies have proven that: Ultrasound waveguide technology in combination with precisely tuned sonic bristle action is significantly more effective at removing bacteria." Similarly, Ultreo claims in some professional advertising that: "As shown in laboratory studies conducted at a leading university, as these bubbles expand and contract, they can remove plaque bacteria." However, as discussed above, Ultreo's tests to support these propositions are only *in vitro* studies, which are not translatable to actual use conditions and have not been replicated in actual use. As such, these studies should be considered unreliable and irrelevant. Furthermore, P&G's and Philip's *in vivo* studies clearly demonstrate that neither the ultrasound, nor the bubbles it purports to activate, removes plaque bacteria in the mouth.

### F.   Consumers Are Being Deceived By Ultreo's Advertisements

Should the Court find that the claims are not expressly false or false by necessary implication, there is no doubt that these claims are sending consumers implied messages that are false. The Lanham Act is designed to prevent advertisers from utilizing sophisticated techniques to convey a literally true message that leaves the public with a false impression. *See, e.g.*, *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981); *Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978). When proceeding on a claim of implied falsehood, it is necessary to "demonstrate, by extrinsic evidence, that the challenged commercials tend to confuse consumers." *McNeil-PPC, Inc. v. Pfizer Inc.*, 351 F. Supp. 2d 226, 250 (S.D.N.Y. 2005) (internal quotation marks omitted). Accordingly, whether an implied

-19-

advertising claim is misleading or not "is generally determined by public reaction to a consumer survey or market research." *SmithKline*, 906 F. Supp. at 181.

P&G commissioned consumer research to determine whether consumers were being misled as a result of Ultreo's advertising claims. *See* Dupont Decl. Ex. A. The results overwhelmingly demonstrated that consumers were, in fact, misled into believing that Ultreo's ultrasound technology, or the bubbles it purports to activate, are able to clean one's teeth alone. Indeed, 72% of the consumers surveyed concluded that the ultrasound alone would clean their teeth, or clean their teeth better. *Id.* at 9. Many of these consumers (37%) also received the false message that the ultrasound would remove plaque, stains and/or tartar. *Id.* at 9. This message is false and misleading since the only clinical study testing the efficacy of Ultreo's ultrasound technology in actual use demonstrates not only that the ultrasound function alone does not remove plaque, but that consumers will be able to remove more plaque without engaging the ultrasound function.

To prevail on a Lanham Act claim, the plaintiff must establish that "not an insubstantial number of consumers received a false or misleading impression from it." *SmithKline*, 906 F. Supp. at 181 (internal quotation marks omitted). The results of P&G's consumer survey – that 72% of consumers have been misled – far exceeds the 15% threshold required to show consumer deception in Lanham Act cases. *See Coca-Cola Co. v. Tropicana Prods., Inc.*, 538 F. Supp. 1091, 1096 (S.D.N.Y.), *rev'd on other grounds*, 690 F.2d 312 (2d Cir. 1982) (determining that a "[a] level of consumer confusion significantly below 15% does not indicate plaintiff's probable success on the merits"); *Novartis*, 290 F.3d at 594 (finding survey evidence showing that 15% of respondents were mislead sufficient to establish "actual deception or at least a tendency to deceive a substantial portion of the intended audience") (internal quotation marks omitted).

-20-

### G.  Ultreo's False and Misleading Claims are Material to Consumers

In addition to identifying the claims at issue and proving their falsity, the plaintiff must also demonstrate that the defendant's misrepresentations are "material."  This means that the representation must be one that is likely to have some effect on the consumer's purchasing decision.  *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997); s*ee also SmithKline*, 906 F. Supp. at 181 (explaining that "[t]o enjoin an ad under the Lanham Act, the claim must be material and likely to influence a consumer's purchasing decision").

Ultreo's claims are likely to and currently are influencing consumers.  Dr. Dupont's consumer survey revealed that 86% of the participating consumers were likely to purchase the Ultreo toothbrush as a result of the false and misleading advertising claims.  Dupont Decl. Ex. A at 10.  This result is not surprising.  Plaque removal is an inherent characteristic of dental hygiene[2] that matters to consumers and influences their purchasing decisions.  Ultreo's claims are convincing consumers that they should buy the Ultreo toothbrush because it cleans their teeth in a unique way by removing plaque with its ultrasound technology.

Courts recognize that where a company makes claims that are scientific or technical in nature, such claims have more of an effect on individual's purchasing decisions and thus are material.  *UpJohn Co. v. Riahom Corp.*, 641 F. Supp. 1209, 1224 (D. Del. 1986) (explaining that claims about clinical studies can create a deception impression about a product which would influence a consumer's decision to purchase it because "American consumers who see a product claiming that clinical tests have shown it safe for use expect that the product has gone through extensive and rigorous testing").  *See also* FTC Policy Statement on Deception, 103 F.T.C. 110, 174 (1984) (explaining that "Information that has been found material where it concerns purpose,

---

[2]  See 21 CFR 872.6865  A powered toothbrush is a device that " . . . is intended to remove inherent plaque . . ."

safety, efficacy, or cost of the product or service"). Thus, Ultreo's claims that laboratory studies support the claim that ultrasound technology removes more plaque are material to consumers and will have an effect on their purchasing decisions.

### H. P&G Is Suffering and Will Continue to Suffer Irreparable Harm if Ultreo is Not Enjoined

In order to grant a preliminary injunction, a court must determine that the plaintiff is "likely to suffer irreparable harm in the absence of immediate relief." In a false advertising case, the analysis is "whether it is likely that [the] advertising has caused or will cause a loss of . . . sales." *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980). P&G need only prove that it has "a reasonable basis" for believing that it will be damaged as a result of Ultreo's advertising. *See DIRECTV*, 497 F.3d at 161.

As an initial matter, when the "false or misleading advertising claims create a danger to public health, [a] presumption of irreparable harm is particularly appropriate." *McNeilab, Inc. v. Am. Home Prods. Corp.*, 675 F. Supp. 819, 826 (S.D.N.Y. 1987), *aff'd*, 848 F.2d 34 (2d Cir. 1988). That is precisely the situation here. Ultreo's false and misleading claims are duping consumers into believing that they need not touch the bristles to their teeth to remove plaque, (pp. 9-10, *supra*). The deception is exacerbated by the fact that Ultreo also advertises that one minute of brushing removes 95% of plaque, (pg. 10, *supra*), meaning that consumers may curtail their brushing. These claims are actively undermining the good dental health skills that all consumers should be practicing to avoid plaque and maintain good oral hygiene. As courts have held, where there is a public health concern, like here, P&G should be entitled to a presumption of irreparable harm. *See McNeilab, Inc.*, 675 F. Supp. at 826.

Where "the materiality of the false statement coupled with the unique nature of the product is likely to cause the consumer to buy the falsely advertised product instead of its

competitor's product," irreparable injury also is presumed.  *Telebrands Corp. v. Wilton Indus., Inc.,* 983 F. Supp. 471, 475 (S.D.N.Y. 1997).  Based upon the consumer survey that was conducted by Dr. Dupont, it is indisputable that these claims are critically material to consumers.  Indeed, 86% of the consumers would be likely to purchase an Ultreo toothbrush based upon the false and misleading advertising claims.  Dupont Decl. Ex. A at 10.  Additionally, power toothbrushes and, specifically the new Ultreo toothbrush, are unique products.  Thus, irreparable harm should be presumed.

Regardless of any presumption of irreparable harm, P&G has also "reasonable basis" to believe that it will be damaged as a result of Ultreo's advertising campaign for two reasons.  First, P&G has demonstrated – through the consumer survey conducted by Dr. Dupont – that a substantial percentage of consumers are being misled by Ultreo's advertisements.  Courts have explained that a demonstration that the competitor's advertising tends to mislead consumers satisfies the Lanham Act's irreparable harm requirement.  *See Coca Cola,* 690 F.2d at 316-17; *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1183 (8th Cir. 1998).  *See also Telebrands Corp. v. Media Group,* No. 97-CIV-6768, 1997 WL 790576, at *4 (S.D.N.Y. Dec. 24, 1997) (finding irreparable harm because the false impression in defendant's advertising may make the defendant's product appear more favorable in the eyes of consumers and induce consumers to buy the product for this reason).  This is especially true when plaintiffs are seeking injunctive relief.  *Clorox*, 140 F.3d at 1183. ("When injunctive relief is sought under the Lanham Act, the finding of a tendency to deceive satisfies the requisite showing of irreparable harm.").  *See also Alternative Pioneering Sys., Inc. v. Direct Innovative Prods., Inc.*, 822 F. Supp. 1437, 1444 (D. Minn. 1993) ("[I]rreparable harm is presumed for purposes of a preliminary injunction motion on a false advertising claim once the moving party establishes a likelihood that the disputed

[advertisements] are false." ).  Second, the consumer analysis done by Coulter-Renken demonstrates that the introduction of Ultreo will adversely affect the sales of P&G's high-end toothbrushes.  Randall Aff. ¶23.  P&G has a reasonable basis for believing that Ultreo's false advertising will likely cause it injury. *See DIRECTV*, 497 F.3d at 161; *Carter-Wallace*, 631 F.2d at 190.  Ultimately, Ultreo's own statements confirm the likelihood that its false advertising campaign is harming P&G.  Randall Aff., Ex. B.  As Ultreo noted in both its press release about this case and on its packaging, "[i]n a recent study, eight out of 10 consumers who used Ultreo said they would switch to Ultreo from their current power toothbrush." *Id*. at ¶27 and Ex. R.

Finally, now is the critical time for high-end power toothbrush sales.  Forty percent of premium power toothbrush sales occur in the months of October, November and December.  Randall Aff. ¶28.  Given the cleaning effectiveness of premium power toothbrushes and their higher price, these products are often given as gifts during the holiday time period.  As a result, a preliminary injunction is necessary to protect P&G during this critical period.

## I.    The Public Interest Favors Injunctive Relief

Courts in Lanham Act cases have "traditionally recognized the strong public policy against the dissemination of false and misleading advertising." *SmithKline*, 906 F. Supp. at 180.  Injunctive relief is particularly compelling here because Ultreo's advertising poses a public health risk and there is a strong public interest in protecting consumers from advertising that is harmful to public health.  Consumer's oral health will likely suffer as a result of believing Ultreo's advertisements and switching to Ultreo.  Consumers are being misled into believing that they do not need to actually touch the Ultreo toothbrush to their teeth to clean them.  Additionally, consumers may heed Ultreo's advertising claims that its toothbrush removes 95% of plaque after only one minute of use and curtail their regime.  Furthermore, Ultreo's

advertising is undermining the efforts of dental professionals to educate the public to brush properly and for the proper amount of time. Courts in similar circumstances have ordered a preliminary injunction. *See McNeil-P.P.C., Inc. v. Pfizer, Inc.*, 351 F. Supp. 2d at 256 (ordering a preliminary injunction where advertisements told consumers that Listerine provided the same benefits as floss or can be used instead of floss). This court should do the same here.

## IV.    CONCLUSION

P&G respectfully requests that the Court to issue a preliminary injunction to be in effect during the pendency of this action ordering Ultreo, its officers, agents, employees, and all other persons or entities acting in concert with them, to immediately cease the dissemination of any advertising, marketing or promotional statements, whether made expressly or by implication, that the ultrasound feature of its toothbrush removes plaque or cleans teeth, or that its ultrasound feature is magic or in any way falsely describing the nature of ultrasound cycles.

Dated: New York, New York
       October 26, 2007

*/s/ LAURA W. SAWYER*
HAROLD K. GORDON (HG-1007)
LAURA W. SAWYER (LS-4385)
JONES DAY
222 East 41st Street
New York, NY  10017-6702
212-326-3939

JOHN B. WILLIAMS
DANIELLE M. HOHOS
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
202-879-3939

*Attorneys for Plaintiff*
*The Procter & Gamble Company*

## CERTIFICATE OF SERVICE

The foregoing MEMORANDUM OF LAW AND APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION was served on all counsel of record on October 26, 2007 by electronic mail through the Court's CM/ECF.


_____ */S/ LAURA W. SAWYER* _____

# APPENDIX A

**APPENDIX A**

**CLAIMS TARGETED TO DENTAL PROFESSIONALS**

| Claims appearing in professional magazines and journals: |
|---|
| "The difference is Ultrasound.  Ultreo takes power brushing where it's never gone before with a groundbreaking combination of ultrasound waveguide technology and precisely tuned sonic bristle action.  Ultreo's bristles create bubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy channeled by a proprietary ultrasound waveguide.  As these bubbles expand and contract, they can remove plaque bacteria.  Ultreo – a safe, yet powerful cleaning combination of ultrasound-activated pulsating bubbles and sonic bristle action for a gentle, deep, long lasting feeling of clean." |
| "Your patients trust your recommendations." |
| "A Deep Clean:  Ultreo's combination of ultrasound waveguide technology and sonic-bristle action can remove hard-to-reach plaque bacteria that bristle action alone can leave behind." |
| "A Fast Clean:  Ultreo has been clinically proven to remove up to 95% of plaque from hard-to-reach areas in the first minute of brushing." |
| "The difference is Ultrasound.  Ultreo takes power brushing where it's never gone before. Invented at the University of Washington in association with former scientists, engineers and executives of Optiva Corporation (developers of the Sonicare® toothbrush).  Ultreo is the first power toothbrush to combine ultrasound waveguide technology with precisely tuned sonic bristle action.  Ultreo's bristles create microbubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy per brushing channeled by a proprietary ultrasound waveguide.  As shown in laboratory studies, as these microbubbles expand and contract, they can remove plaque bacteria.  The result is an incredible, long-lasting feeling of clean." |
| "Ultreo's combination of ultrasound waveguide technology and sonic bristle action can remove hard-to-reach plaque bacteria that bristle action can leave behind."  In print below this claim: "As shown in laboratory studies conducted at a leading research university." |
| "Bubbles are activated by the ultrasound and transformed into pulsating bubbles that can remove plaque bacteria, as shown in laboratory studies." |

**Claims appearing in print advertisements from the American Dental Association Convention:**

"Invented at the University of Washington, Ultreo takes power brushing where it's never gone before with a groundbreaking combination of ultrasound waveguide technology and precisely tuned sonic bristle action.  Ultreo's bristles create microbubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy per brushing channeled by a proprietary ultrasound waveguide.  As shown in laboratory studies, as these microbubbles expand and contract, they can remove plaque bacteria.  The result is an incredible, long-lasting feeling of clean."

"Clinically proven to remove up to 95% of hard-to-reach plaque in the first minute of brushing…"

"In a recent study, 80% of people who use Ultreo for 30 days would switch to Ultreo from the power toothbrush they were using before."

| **Claims appearing in sponsored articles in trade publications:** |
| --- |
| "Ultreo is the newest and most innovative power toothbrush available.  It combines ultrasound waveguide technology with sonic bristle action for a deep, long-lasting feeling of clean.  Ultreo's sonic action bristles create bubbles and clean on contact, while the ultrasound waveguide channels ultrasound energy from the transducer in the back of the brush head directly into the bubbles.  The bubbles are activated by the ultrasound and transformed into pulsating bubbles that can remove plaque bacteria.  It really is very exciting technology." |

**CLAIMS TARGETED AT CONSUMERS AND DENTAL
PROFESSIONALS**

| Claims appearing on Ultreo's packaging: |
|---|
| "Sonic action bristles with power tip creates bubbles and cleans away plaque upon contact." |
| "The difference is Ultrasound.  Ultreo™ is the first power toothbrush to combine the forces of ultrasound waveguide technology with precisely tuned sonic bristle action.  Ultreo's bristles create bubbles that are powerfully activated by nearly 4 million cycles per brushing of ultrasound energy channeled by a proprietary ultrasound waveguide." |
| "Ultreo—a safe, yet powerful cleaning combination of ultrasound-activated pulsating bubbles and sonic bristle action for a gentle, deep, long-lasting feeling of clean." |
| "Bubbles are activated by the ultrasound and transformed into pulsating bubbles for an incredible feeling of clean." |
| "A deep clean.  Ultreo's combination of ultrasound waveguide technology and sonic bristle action can remove hard-to-reach plaque for an incredibly deep feeling of clean." |
| "8 out of 10 people who used Ultreo in a recent study would switch to Ultreo from their current power toothbrush." |

| Claims appearing on Ultreo's website: |
|---|
| "Sonic action bristles with power tip clean away plaque upon contact and create microbubbles."[1] |
| "Ultreo takes power brushing where it's never gone before." |
| "Ultreo is the first power toothbrush to combine patented waveguide technology with precisely tuned sonic bristle action.  Ultreo's bristles create microbubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy per brushing channeled by a patented ultrasound waveguide." |
| "Ultreo's combination of patented ultrasound waveguide technology and sonic bristle action can remove hard-to-reach plaque for an incredibly deep feeling of clean." |
| "Ultreo has been clinically proven to remove up to 95% of plaque from hard-to-reach areas in the first minute of brushing." |

---

[1]     Ultreo recently changed its website.  The prior version of the website made the following claims: "Sonic action bristles with power tip creates microbubbles and cleans away plaque upon contact."

| Claims appearing in a letter from Ultreo's President to consumers contained in the packaging and appearing on the website: |
|---|
| The ultrasound waveguide is "magic." |
| Referring to the waveguide "this is where the magic happens." |

| Claims appearing in print advertisements: |
| --- |
| "Latest technology achieves a new level of clean and white within the first minute of brushing." |
| "Independent research studies have proven that: <br><br> o  Ultrasound waveguide technology in combination with precisely tuned sonic bristle action is significantly more effective at removing bacteria. <br><br> o  In the first minute of brushing, Ultreo removes up to 95% of hard-to-reach plaque <br><br> o  Ultreo is effective at removing coffee, tea, and other extrinsic stains for naturally whiter teeth in just 14 days." |
| "The sonic bristles create bubbles that pulsate at an exact ultrasonic frequency for optimal plaque removal." |