UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

THE PROCTER & GAMBLE COMPANY,   )
                                )
       Plaintiff,               )   No. 07 Civ. 8379 (RJS)
                                )
       v.                       )
                                )   ECF CASE
ULTREO, INC.,                   )
                                )
       Defendant.               )

------------------------------------------------------------ x

**AFFIDAVIT OF JOHN B. WILLIAMS IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

THE DISTRICT OF COLUMBIA       )
                               : ss.:
                               )

John B. Williams, being duly sworn, states:

1. I am a member of the bar of the District of Columbia and a partner in the law firm of Jones Day, counsel for Plaintiff, the Procter & Gamble Company ("P&G") in this action. My motion for admission *pro hac vice* to this Court is currently pending. I make this affidavit in further support of P&G's Motion for a Preliminary Injunction.

2. On March 27, 2007, I wrote a letter to Ultreo, Inc. ("Ultreo") on behalf of P&G, in connection with certain false and misleading statements found on Ultreo's website, including the assertion that the bubbles created by the ultrasound feature were able to remove plaque bacteria. Attached as Exhibit A is a true and correct copy of that letter.

3. I also informed Ultreo in that letter that P&G was aware of no *in vivo* studies that would support Ultreo's claims that ultrasound could remove plaque bacteria in the user's mouth and requested that if Ultreo had any such studies, it provide them to P&G.

WAI-2847560v1

4. In light of the absence of such studies, I requested that Ultreo modify the statements on its website to correct the false and misleading message in the advertisements by eliminating references to Ultreo's performance "in the mouth," which suggests that clinical studies have been done to show that ultrasound created bubbles and/or energy that removes plaque on teeth.

5. On April 4, 2007, Ultreo responded to my March 27, 2007 letter. Attached as Exhibit B is a true and correct copy of that letter. Ultreo disagreed with both the analysis and conclusions concerning the statements from the Ultreo website cited in my letter. Despite this disagreement, Ultreo agreed to modify its advertising. Nevertheless, Ultreo did not provide any clinical studies supporting its claim that ultrasound removes plaque on teeth or in the user's mouth.

6. In order to clarify the changes that P&G was seeking, I again wrote to Ultreo's counsel, Marc C. Levy, on April 18, 2007. A true and correct copy of that letter is attached as Exhibit C. In that letter, I explained that "Ultreo should make no claim in any internet, print or other advertising that the ultrasound feature or the bubbles will clean teeth, or remove plaque, or remove bacteria, in the mouth." Again, I requested any data that Ultreo had to support its claims.

7. Subsequently, Ultreo's advertising removed the specific phrase "in the mouth," but the new language still communicated the message that the ultrasound feature created bubbles that would remove plaque bacteria in the mouth. On May 29, 2007, I sent a letter to Marc C. Levy, expressing P&G's continuing concerns about the false and misleading nature of Ultreo's slightly revised advertising campaign. A true and correct copy of this letter is attached as Exhibit D. The letter also gave specific examples of the objectionable

WAI-2847560v1

claims, including Ultreo's statement that "Ultreo's bristles create bubbles that are powerfully activated by nearly 4 million cycles of ultrasound energy channeled by a propriety ultrasound waveguide. As these bubbles expand and contract, they are able to remove plaque bacteria."

8. In this May 29, 2007 letter, I again requested that Ultreo take action to modify its packaging, print advertising and website to remove any express or implied claims that the bubbles created by the toothbrush will clean teeth, remove plaque, or remove bacteria in the absence of any contact between the brush and the tooth. I continued to request any studies or data to support these claims since no such data had ever been provided by Ultreo.

9. On June 6, 2007, Ultreo responded to my May 29, 2007 letter. A true and correct copy of the June 6, 2007 letter from Marc C. Levy to myself is attached as Exhibit E. In that letter Mr. Levy informed me that Ultreo would modify its advertising, but only to include an express reference to laboratory studies as support for its claim. Again, Ultreo provided no clinical support for its claim.

10. After the June 6, 2007 letter, Ultreo's counsel and I spoke via telephone on June 8, 2007. During that discussion, I expressed my concern that Ultreo's proposal to add express language about "laboratory studies" in connection with statements referencing the ultrasound feature's ability to remove plaque bacteria made the misrepresentation more objectionable given that Ultreo lacked clinical support for the claims. I stressed that Ultreo had no clinical substantiation for its claims that the ultrasound feature had any utility for a user.

11. Ultreo's counsel followed up this conversation with a letter to me on June 14, 2007. In

- 4 -

that letter, Ultreo agreed to refrain from referencing the capacity of the ultrasonic feature of the product *by itself* (including the bubbles activated by such ultrasound) to remove plaque bacteria. (emphasis added). The letter stated that the changes would be "implemented immediately and we estimate will be completed within approximately 30 days." Ultreo also stated that it considered this matter closed and that it would "not make any further changes in response to Procter and Gamble's demands." A true and correct copy of this letter is attached as Exhibit F.

12. I responded to that letter on June 26, 2007. A true and correct copy of that letter is attached as Exhibit G. I explained that it was P&G's understanding that Ultreo's advertising would be significantly revised, but that P&G was concerned about Ultreo's statement that it would not refer to the ultrasound feature of the product of the product "by itself." Given that no studies support the claim that the ultrasound feature of the brush and/or the bubbles removes plaque in actual use, I explained that it would also be false and misleading to suggest that the "combination" of bubbles and bristle action would remove plaque when it is only the bristles that remove plaque. As I wrote: "To state or suggest that plaque can be removed through a combination or mechanisms would clearly suggest to the consumer that the ultrasound mechanism and/or the bubbles have some effect upon plaque removal." I also explained that P&G objected to the description of Ultreo's ultrasound waveguide as "where the magic happens." Moreover, I again stressed that the reference to laboratory studies creates the impression that the bubbles have some cleaning effect in the mouth and expressed concerns regarding Ultreo's claim that its product is able to produce "four million cycles of ultrasound energy."

13. Ultreo responded on July 5, 2007. A true and correct copy of that letter is attached as

- 4 -

- 5 -

      Exhibit H.  In that letter, Ultreo did not address my assertion that the advertisement still communicated the message that the ultrasound feature had an effect upon plaque removal and cleaning.  Mr. Levy also stated that he would not remove the reference to laboratory studies or to modify the advertisement in any other way.  Mr. Levy stated: "Ultreo does not intend to remove truthful references to laboratory studies regarding the capacity of the ultrasound feature of the product to remove plaque bacteria in its advertising."

14.     A true and correct copy of *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.* No. 81 Div. 731, 1982 WL 121559, at *1 (S.D.N.Y. June 9, 1982) is attached as Exhibit I.

15.     A true and correct copy of *Telebrands Corp. v. Media Group*, 1997 WL 790576 (S.D.N.Y. Dec. 24, 1997) is attached as Exhibit J.

16.     A true and correct copy of FTC Policy Statement on Deception, 103 F.T.C. 110 (1984) is attached as Exhibit K.

17.     There has been no prior application in this matter for the relief requested herein.

                                                                                          _____  
                                                                                                          John B. Williams

Sworn to before me this

9th day of October, 2007

_____  
Notary Public

                                                                              GLENDA L. DICKONSON  
                                                         NOTARY PUBLIC DISTRICT OF COLUMBIA  
                                                          My Commission Expires October 31, 2011

## CERTIFICATE OF SERVICE

    The foregoing AFFIDAVIT OF JOHN B. WILLIAMS IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION was served on all counsel of record on October 26, 2007 by electronic mail through the Court's CM/ECF system.

                                                  */s/ Laura W. Sawyer*