# Exhibit I

Not Reported in F.Supp.
Not Reported in F.Supp., 1982 WL 121559 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Cuisinarts, Inc. v. Robot-Coupe Intern. Corp.
S.D.N.Y.,1982.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
CUISINARTS, INC., Plaintiff,
v.
ROBOT-COUPE INTERNATIONAL
CORPORATION, Defendant.
No. 81 Civ 731-CSH.

June 9, 1982.

MEMORANDUM OPINION AND ORDER
HAIGHT, District Judge:
*1 Six motions are presently pending. They are:

1. RCI's motion for reconsideration of the Court's preliminary injunction, rendered orally at the conclusion of the February 4, 1982 hearing, with respect to RCI's "21-0" advertisement.

2. Cuisinarts' motion for a broad form preliminary injunction addressing RCI's advertising campaign.

3. Cuisinart's motion to dismiss with prejudice certain of the RCI counterclaims, repleaded in an amended answer dated February 24, 1982, and the parties' cross-motions for sanctions in connection therewith.

4. Cuisinarts' motion to strike RCI's counterclaim for trade libel for failure to plead special damages.

5. RCI's motion to compel discovery on the issues said to arise out of the "21-0" preliminary injunction.

6. RCI's motion for a protective or confidentiality order with respect to certain discovery requested by Cuisinarts.

This memorandum resolves those motions, which are discussed in the above sequence.

*RCI's Motion for Reconsideration of the February 4,*

*1982 Preliminary Injunction:*

*The "21-0 Advertisement*

In considering this motion, I overrule Cuisinarts' technical objections to the timing of RCI's opposing papers. They were filed and served in accordance with the Court's directions at the conclusion of the February 4, 1982 hearing.

The motion usefully focuses upon whether the Court granted a preliminary injunction on the basis of the facial falsity of the advertisement, or its possible misleading effect. I cheerfully concede that certain portions of my oral ruling are consistent with each hypothesis. One hopes that one's declarations from the bench are at least coherent, but they sometimes lack precision. The distinction is important because if the ad is facially false, I may enjoin it "without regard to consumer reaction," *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir.1981); whereas if the ad's statements are true, and the issue "is whether true statements are misleading or deceptive despite their truthfulness," Cuisinarts "must adduce evidence (usually in the form of market research or consumer surveys) showing how the statements are perceived by those who are exposed to them." *McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517, 525 (S.D.N.Y.1980).

I hold that material statements in the ad are facially false. I incorporate my oral findings by reference, imprecise as some of them may have been. The basic point is that the ad states, by necessary implication, that Robot-Coupe and Cuisinarts both build professional model food processors, and that French restaurateurs, presented with two existing alternatives, chose the Robot-Coupe model over the Cuisinarts model by the score of 21 to 0.

I appreciate that the ad does not make that statement in *haec verba*. That is not necessary. The main headline of the two-page ad reads:

"ROBOT-COUPE: 21
"CUISINART: 0"

*2 That eye-catching scoreboard is immediately followed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-08379-RJS    Document 19-10    Filed 10/26/2007    Page 3 of 6

Not Reported in F.Supp.                                                                                                      Page 2
Not Reported in F.Supp., 1982 WL 121559 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

by this sub-headline, in somewhat smaller but still capitalized letters:
"WHEN ALL 21 OF THE THREE-STAR RESTAURANTS IN FRANCE'S MICHELIN GUIDE CHOOSE THE SAME PROFESSIONAL MODEL FOOD PROCESSOR, SOMEBODY KNOWS THE SCORE-SHOULDN'T YOU?"

Those words, thus arranged, are the practical, grammatical, syntactical equivalent of the summary I have given.

Nor, in reaching that conclusion, do I tread upon forbidden judicial territory. To use Judge Lasker's phrase in *American Brands, Inc. v. R.J. Reynolds Tobacco Co.*, 413 F.Supp. 1352, 1357 (S.D.N.Y.1976), "the court's reaction is at best not determinative and at worst irrelevant" only in cases where the issue is "whether a statement acknowledged to be literally true and grammatically correct nevertheless has a tendency to mislead, confuse or deceive." *Ibid.* Consumer reaction is determinative where an advertisement is ambiguous and, hence, only potentially misleading. *Vidal Sassoon, supra,* at 276. In the case at bar, the statement conveyed by the ad is unambiguous: it is, to reiterate, that the French restaurateurs chose between two then available professional model food processors, one manufactured by Robot-Coupe and the other by Cuisinarts.

Furthermore, that statement was false, since it is undisputed that Cuisinarts does not market a professional model food processor, confining itself entirely to processors for use in the home.

That concession emerges from the affidavit of RCI President Finesman of March 1, 1982 at ¶ 10, p. 8, although it is carefully phrased: "I was also aware that Cuisinarts did not market any food processor which could satisfy the requirements of these restaurants as the Robot-Coupe professional models did"; in point of fact, Cuisinarts did not market any professional food models at all. Hence the falsity of the ad, which immediately follows the "score board" of Robot-Coupe 21, Cuisinarts 0, with the statement that "all 21 of the three-star restaurants in France's Michelin Guide choose the same professional model food processor ..." Just as a court, in evaluating whether an ambiguous advertisement is misleading views its "entire mosaic" rather than "each tile separately," *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir.1963), so in determining facial falsity the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other.

In *Vidal Sassoon, supra,* a television commercial for a shampoo displayed a high fashion model named Cristina Ferrare, who described shampoo tests purportedly made "with over nine hundred women like me ..." It was undisputed that of the nine hundred women who tested the products, only two-thirds were adult women. The Second Circuit had no difficulty in recognizing the necessary implication in the phrase "women like me" that all test subjects were adults; and, on the basis of the undisputed evidence, branded the statement facially false and subject to injunction without regard to consumer reaction. *Id.* at 277. I reach the same conclusion in the case at bar.

*3 At the conclusion of the February 4, 1982 hearing, I granted a preliminary injunction in these words:
"In short, I grant the preliminary injunction with respect to this advertisement, and it follows that the defendant, its officers, directors, shareholders, agents, advertising agencies, attorneys, servants, employees, successors and assigns and those persons or companies in active concert or participation with them, are hereby preliminarily restrained and enjoined from printing, reproducing, displaying, disseminating, distributing, or uttering the contents of the advertisement attached as Exhibit A hereto in any advertisement or promotional material or any statement whatsoever comprising or resembling Exhibit A hereto.
"I also grant the second paragraph of the injunction and the defendants and the other interests to which I have referred are preliminarily enjoined from printing, reproducing, disseminating or uttering in any advertisement or promotional material or presentation language directly or indirectly stating or implying that (a) France's 21 Three-Star restaurants made a direct comparison between the Robot-Coupe professional model and a Cuisinarts professional model before selecting Robot-Coupe as superior;
"(b) The Robot-Coupe professional food processor is superior to Cuisinarts food processors.
"(c) The Robot-Coupe food processor pictured in the advertisement was the same model chosen by the said restaurants." Tr. 37-38.

RCI argues that the injunction is overly broad, since it is:
"... seemingly precluded from: advertising to the consuming public that Robot-Coupe invented the food processor and that all 21 French three-star restaurants have a Robot-Coupe professional model food processor; making virtually any statement about its Robot-Coupe versatility and accessories; using the advertising tagline 'Food Processor to the Stars'; or even promoting its food processor cookbook." Brief at 63.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1982 WL 121559 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

These are unreasonable fears. Everything that RCI says in the quoted paragraph it is afraid it cannot say, it can say. An advertisement will violate this injunction only if it takes the same form of the advertisement attached as Exhibit A to Cuisinarts' motion papers (first paragraph of the injunction); or, while taking a different form, directly states or indirectly implies that the French three-star restaurants made a direct comparison between then existing Robot-Coupe and Cuisinarts professional model food processors before selecting the Robot-Coupe model as superior, or that Robot-Coupe professional model food processors are superior to Cuisinarts professional model food processors (second paragraph of injunction). RCI and its advertising agencies should be able to avoid repeating those particular falsehoods. No other inhibitions may reasonably be inferred from the preliminary injunction.

RCI's motion for reconsideration of the February 4, 1982 preliminary injunction is denied.

*Cuisinarts' Motion for A "Broad Form" Preliminary Injunction*

*4 Cuisinarts has obtained two preliminary injunctions, each addressing a particular advertisement which the Court concluded transcended bounds of fair competition. Cuisinarts now moves for a much expanded preliminary injunction, which in effect tracks the language of the Lanham Act.

On the present record, Cuisinarts is not entitled to so broad an injunction. The by now familiar standards are stated in <u>Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 206-07 (2d Cir.1979)</u>:
"A preliminary injunction is proper where the plaintiff establishes possible irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."

Two unfair ads run by RCI are revealed by the record to date. Those ads have been specifically enjoined. Continuation by RCI of an unfair advertising campaign would clearly carry with it the element of possible irreparable harm to Cuisinarts. It is the likelihood of such continued behavior, a likelihood sufficiently pronounced to warrant broad form injunctive relief, which is now at issue.

Cuisinarts argues that the two prior incidents brand RCI a hopeless recidivist, a contention which Cuisinarts says is corroborated by statements attributed to RCI's President Finesman in articles printed in *Advertising Age* on March 15, 1982 and the New York Times on March 31. Both articles quoted Mr. Finesman as saying, with respect to the RCI advertising campaign: "What's been going on to date is mild."

Mr. Finesman says in affidavits that he was misquoted; that he was not aware of the article in *Advertising Age;* and that he wrote at once to the Associated Press, to which the Times story was ascribed, to protest that he had been misquoted. That latter contention is corroborated by Mr. Finesman's letter of April 1, 1982 to the Associated Press, a copy being attached to his affidavit of April 5, 1982. I am inclined to believe Mr. Finesman's disclaimers, since to actually make such a statement within the context of this pending litigation, and the Court's two prior orders, would be a remarkably silly thing to do.

I am not prepared, on the basis of the two previous ads which I have found to be offensive, to infer that probability of future intransigence which would justify a broad preliminary injunction at this time. Mr. Finesman states in his affidavit that he believed the advertisements in question to be fair and proper, and had each of them vetted by counsel before publication. While the good faith of an infringer or publisher of false or misleading material will not bar injunctive relief addressed to the particular conduct in question, the issue of good faith or bad faith is pertinent in determining whether a defendant is vulnerable to a broad form proscription of future conduct. Cf. <u>Kiki Undies Corporation v. Promenade Hosiery Mills, Inc., 411 F.2d 1097, 1101 (2d Cir.1969)</u>. On that issue, I cannot conclude that Cuisinarts has established either of the two prongs summarized in *Dallas Cowboy Cheerleaders, supra.* On another aspect of these very motions, Cuisinarts contends that it is entitled to pre-trial discovery of RCI's advertising agencies, in order to determine whether RCI's undisputably aggressive campaign has been tainted by bad faith. I agree that such discovery is appropriate; but it is too early to say that Cuisinarts has demonstrated "probable success on the merits" on the issue. As to the second criterion justifying a preliminary injunction, the questions going to the merits are serious enough; but the chilling effect upon RCI of a broad form preliminary injunction inprovidently granted constitutes a greater hardship than requiring Cuisinarts to call to the Court's attention, by means of further pleadings, subsequent RCI ads which Cuisinarts consider vulnerable to legal attack. In point of fact, Cuisinarts has not perceived a need for such additional action since its

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-08379-RJS    Document 19-10    Filed 10/26/2007    Page 5 of 6

Not Reported in F.Supp.                                                                                                    Page 4
Not Reported in F.Supp., 1982 WL 121559 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

application of January 28, 1982, addressed to the "21-0" ad.

**\*5** Cuisinarts' motion for a broad form preliminary injunction is denied at this time, without prejudice to renewal upon a more fully developed record.

### *RCI's Counterclaims*

RCI has asserted two counterclaims in its initial answer and an amended answer. Cuisinarts' motion to dismiss the counterclaims pleaded in the original answer was addressed by this Court's Memorandum Opinion and Order of December 4, 1981, familiarity with which is assumed. The Court's Opinion dismissed the first counterclaim, and the second counterclaim sounding in trade libel, insofar as that cause of action was based upon a particular advertisement Cuisinarts ran in the New York Times. To the extent that the second cause of action was based upon a brochure, critical of food processors manufactured by Robot-Coupe S.A. and circulated at a trade exposition in Chicago in January of 1981, the Court called for further briefing on choice of law issues.

Those additional memoranda are now at hand, together with an amended answer which reasserts the original counterclaims in their entirety, notwithstanding the Court's direction that the first counterclaim and that part of the second counterclaim based upon the Times ad be dismissed without leave to replead. RCI professes to have been concerned that a failure to reassert these counterclaims in its amended pleading might be perceived as an abandonment. One would have thought that the Court's order dismissing these counterclaims without leave to replead would have preserved RCI's position for possible review by an appellate court. In any event, those aspects of the counterclaim are dismissed again, again with prejudice, and again without leave to replead, by which I mean: do not plead these counterclaims again. No costs or attorneys' fees are taxed on this aspect of the motion.

I come again, then, to that portion of the trade libel counterclaim arising out of the brochure. The brochure is fully described in the Memorandum Opinion of December 4, 1981, at slip op. 12. The question is whether, in order to sustain a trade libel cause of action based upon this brochure, RCI must plead special damages with specificity (which it has not done) and thereafter prove them.

The parties are in agreement that this Court, whose jurisdiction is founded upon diversity of citizenship, must look to New York law to resolve the choice of substantive law question; and that New York follows the "interest analysis" approach. On that basis, the choice lies between the law of New York, where the brochure in question was created and designed by Cuisinarts' advertising agency and thereafter printed; and the law of Illinois, the brochure's distribution at a trade meeting in Chicago having given rise to the counterclaim. The law of Connecticut, as the jurisdiction in which both RCI and Cuisinarts maintain their principal places of business, and the law of Delaware, in which RCI is formally incorporated, do not have comparable contacts with this tort action for defamation.

**\*6** I need not choose between the laws of New York and Illinois because they are the same on this issue. The distinction lies between attacks upon a product, sometimes referred to as an example of libel *per quod,* and attacks upon the integrity or business methods of a company, generally recognized to constitute a libel *per se.* Special damages must be specifically pleaded and proved in the former case, not in the latter. This is the law of New York. *Drug Research Corp. v. Curtis Publishing Co.,* 70 N.Y.2d 435, 440, 199 N.Y.S.2d 33, 37 (1960). It is also the law of Illinois. *Continental Nut Company v. Robert L. Berner Company,* 345 F.2d 395 (7th Cir.1965); *Whitby v. Associates Discount Corp.,* 59 Ill.App.2d 337, 207 N.E.2d 482 (1965); *National Educational Advertising v. Cass Student Advertising Inc.,* 454 F.Supp. 71 (N.D.Ill.1977).

In *Continental Nut,* one nut importer sent a trade letter to its customers, saying of its rival's product that these were "green nuts" and that the purchasers "will have a shrinkage on their hands and the nuts will develop mould." The Seventh Circuit, construing Illinois law, held that these remarks were libelous *per quod* but not *per se;* to permit recovery on a theory of libel *per se,* "there must be a showing that [plaintiff] has been accused of fraud, mismanagement, or financial instability." 345 F.2d at 397.

In *Whitby, supra,* the Illinois appellate court stated generally:
"Under Illinois common law, there are five classes of words which give rise to a cause of action for slander if falsely communicated. The five classes of words are as follows:
"1. Those imputing the commission of a criminal offense;
"2. Those imputing infection with a communicable disease of any kind which, if true, would tend to exclude one from society;
"3. Those imputing inability to perform or want of integrity in the discharge of duties of office or employment;
"4. Those prejudicing a particular party in his profession

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1982 WL 121559 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 5

or trade;
"5. Defamatory words, which though not in themselves actionable, occasion the party special damages." 207 N.E.2d at 484.

The Court in *Whitby* continued:"In instances where the ordinary meaning of the words themselves is hurtful, but the words do not impute anything within the first four offensive categories, as aforesaid, the slander is per quod, and proof of special pecuniary damages is necessary to sustain a recovery. The requirements of actionable defamation are strict in the interest of protection of free expression." *Id.* at 485.

Illinois law applies the same rules to libel as well as to slander. *Ibid.*

While Illinois statutory law recognizes a cause of action for "commercial disparagement," Uniform Deceptive Trade Practices Act, ch. 121 1/2 , Ill.Rev.Stat. § § 311-317, the statute furnishes equitable relief only, and does not give rise to a claim for money damages such as that pleaded by RCI. *National Educational Advertising Services, supra,* at 73.

*7 I conclude that RCI is required to specifically plead and to prove special damages proximately caused by the statements contained in the brochure in question. Because the second counterclaim does not do that, it is dismissed, this time with leave to replead within thirty (30) days of the date of this Opinion and Order.

*Discovery Disputes*

In opposing Cuisinarts' application in January, 1982 for a preliminary injunction in respect of the "21-0" ad, RCI demanded discovery with respect to Cuisinarts' own advertising campaign, and with respect to the ASI Market Research, Inc. survey, upon which Cuisinarts relied in support of its alternative contention that the "21-0" ad was potentially misleading, as opposed to facially false.

These discovery requests by RCI are denied. No showing is made why, within the context of a preliminary injunction motion addressing a particular ad run by RCI, the workings of the Cuisinarts advertising campaign are relevant, or would lead to the discovery of admissible evidence. RCI's "21-0" ad was either vulnerable to legal attack or it was not; what is material is what RCI did with this ad, not what Cuisinarts was doing with its ads.

Since I have concluded that the "21-0" ad was facially false, consumer reaction is irrelevant, and discovery into the mechanics and techniques of the ASI survey would serve no useful purpose.

Cuisinarts, for its part, has noticed the depositions of RCI's former and present advertising agencies, and demanded the production of specified documents in connection with those depositions. RCI resisted this discovery, interpreting the Court's stay of discovery notices "engendered by" Cuisinarts' January, 1982 motion for a preliminary injunction addressing the "21-0" ad as constituting a freeze on all discovery by both parties. That is too broad an interpretation; I intended to refer only to RCI's requests for expedited discovery in the face of that motion, discovery requests which I have dealt with in the preceding paragraphs of this opinion. It is clear that, within the broader boundaries of this litigation, both parties should be free to make legitimate demands for appropriate discovery.

I deny RCI's motion to vacate the subpoenas and document demands, except that the documents referred to in Schedule 1, Items 5 and 6(c) need not be furnished, and the witnesses from the advertising agencies need not testify with respect to the cost of the advertising in question.

Both parties agree that a confidentiality order should be entered in connection with this discovery. The only dispute is as to the form. I prefer the form drafted by RCI, and will sign such an order upon presentation.

The foregoing is So Ordered.

S.D.N.Y.,1982.
Cuisinarts, Inc. v. Robot-Coupe Intern. Corp.
Not Reported in F.Supp., 1982 WL 121559 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.