UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THE PROCTER & GAMBLE COMPANY,    :
                                 :   Civil Action No. 07-8379 (RJS)
                    Plaintiff,   :
                                 :
         v.                      :   DECLARATION OF
ULTREO, INC.,                    :   MARC LEVY
                                 :
                    Defendant.   :
-------------------------------------------------------------x

I, MARC LEVY, hereby declare under penalty of perjury as follows:

**Background**

1.    I am a partner in the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP and am one of the attorneys representing Defendant, Ultreo, Inc. in this action. I submit this declaration, which is based upon my personal knowledge, except as otherwise indicated, in opposition to Plaintiff Procter & Gamble's ("P&G") motion for preliminary injunctive relief.

2.    I have reviewed the Affidavit of John B Williams filed in support of Plaintiff's motion for preliminary injunction. Mr. Williams's affidavit provides a misleading account of the series of correspondence that occurred between us in the more than six months before P&G ultimately filed its motion for preliminary injunction..

3.    Mr. Williams first notified Ultreo of its objections to Ultreo's advertising in its March 27, 2007, letter to Mr. Jack Gallagher of Ultreo. In that letter, Mr. Williams made the same objection that he makes in his current motion, namely, that Ultreo lacks any "in vivo studies" that showed that the ultrasonic feature of the Ultreo toothbrush was "capable of removing plaque." See Willliams Aff., Ex. A. Based on that objection, P&G's demand was relatively modest: "Specifically, we request that you eliminate any reference to Ultreo's

performance 'in the mouth' that suggests that clinical studies have been done to show that ultrasound and or sonic vibrations create bubbles and or energy that removes plaque on teeth." Id.

4.     In my letter of April 4, 2007, I informed Mr. Williams that Ultreo disagreed with his analysis and his conclusions. See Williams Aff., Ex. B. I explained that Ultreo possessed reasonable substantiation for the claims it was making, including laboratory studies demonstrating the method of action for removal of plaque bacteria, and clinical studies demonstrating the ability of the Ultreo toothbrush to remove plaque.

5.     I also pointed out to Mr. Williams that one of the very authorities he cited in his letter, a 2000 decision by the National Advertising Division of the Better Business Bureau ("NAD") involving the Sonex toothbrush (*The Sonex Corp.* (The UltraSonex Toothbrushes & SoniPick Flosser), Case No. 3656 (May 1, 2000), actually contradicted his position. In that case, the NAD found that a laboratory study isolating the ultrasonic feature of the Sonex toothbrush provided reasonable substantiation for Sonex's claims that its ultrasonic feature "cleans teeth," "interrupts the bacterial process" and "disrupts the bacteriological activity that is at the root of tooth decay and gum disease." A true and correct copy of this NAD decision is attached as Exhibit A.

6.     Despite our disagreement, given the relatively modest nature of Mr. Williams's demand, Ultreo decided to comply "solely to avoid a continuation of the current dispute and the costs associated with defending its position." Williams Aff., Ex. B.

7.     Two weeks later, Mr. Williams chose to "reiterate" his concern "so that there is no confusion in this regard." Williams Aff., Ex. C. In this April 18, 2007 letter, Mr. Williams confirmed his demand that Ultreo should make no claim that ultrasonic feature of the Ultreo

2

toothbrush or the bubbles cleans in the mouth: "Ultreo should make no claim in any internet, print or other advertising that the ultrasound feature or the bubbles will clean teeth, or remove plaque, or remove bacteria, **in the mouth**. . . . . Similarly, there should be no claim that the ultrasound feature or the bubbles are capable of, or have the ability to, clean teeth, remove plaque, or remove bacteria **in the mouth**." Id. (emphasis added).

8. Ultreo complied with Mr. Williams's very clear March 27th demand that he repeated in his April 18th letter. Nonetheless, on May 29th, more than two months after sending his first letter, Mr. Williams changed his demand and insisted that Ultreo eliminate not only any express claim that the bubbles produced by the Ultreo can remove plaque bacteria in the mouth, but also any such claim "by implication." Williams Aff., Ex. D.

9. I informed Mr. Williams in my June 6th response to his May 29th letter that Ultreo viewed his new demand with considerable skepticism. Williams Aff., Ex. E. I told him that Ultreo had made the modifications to its website during the first week of April. Had P&G been dissatisfied with those changes, I would have assumed that Mr. Williams would have promptly informed me, especially given the seriousness with which he asserted his client approached the matter. Yet, in his April 18th letter, Mr. Williams indicated no dissatisfaction whatsoever with the website modifications that had already been made.

10. Nonetheless, again in an effort to try to avoid this dispute, I informed Mr. Williams that Ultreo would include express references to laboratory studies when discussing the ability of the ultrasound feature of the Ultreo toothbrush to remove plaque bacteria. Williams Aff., Ex. E. In doing so, I pointed out to Mr. Williams that this conformed to the standards of the NAD, which had considered a very similar issue in connection with the Sonicare toothbrush. *The Optiva Corp.*, Case Nos. 3329 & 3230 (Aug. 1, 1995) (finding the advertiser's "beyond-the-

bristles" claim to be substantiated a stand-alone, mode-of-operation claim provided that such claims clearly state that plaque removal beyond the bristles is based on laboratory studies). A true and correct copy of this NAD decision is attached as Exhibit B.

11. In response to my June 6, 2007, letter, I received a phone call from Mr. Williams in which he informed me that not only was this remedy insufficient for P&G, but also that, according to P&G, this actually made the situation worse. I informed Mr. Williams that his position was completely without merit, but that I would review it with Ultreo and would respond to him appropriately.

12. In my June 14, 2007 letter, I iterated my disagreement with Mr. Williams's new position. Williams Aff., Ex. F. I also highlighted how his position was inconsistent with his client's own conduct in advertising the antibacterial capabilities of its own products, such as Crest Pro Health mouth rinse. Despite this disagreement, and again solely in an attempt to avoid litigation, I informed Mr. Willliams that Ultreo would further revise its consumer advertising and packaging so as "not [to] refer to the capacity of the ultrasonic feature of the product by itself (including the bubbles activated by such ultrasound) to remove plaque bacteria." Williams Aff., Ex. F.

13. In his June 26, 2007 response to my letter, Mr. Williams mischaracterized my letter in an effort to demand new sweeping changes to Ultreo's advertising. Mr. Williams demanded that Ultreo revised its advertising "to remove any claim, express or implied, that the bubbles are activated by ultrasound energy and are able to remove plaque bacteria or to clean on contact; or that the "forces of ultrasound wavelength technology" have any cleaning effect; or that the sonic action bristles create bubbles that clean away plaque upon contact (or give a feeling of clean); or that the brush is able to remove plaque bacteria "that bristle action alone can

4

leave behind;" or that the combination of ultrasound-activated pulsating bubbles and sonic bristles action have any effect upon cleaning." Williams Aff., Ex. G.

14. After I received Mr. Williams's June 26, 2007 letter, it was clear to me that nothing Ultreo did to reasonably address P&G's demands would satisfy P&G. In my July 5, 2007 letter, I corrected the inaccuracies and erroneous assumptions in Mr. Williams' letter and confirmed to him that Ultreo would not make any further changes in response to P&G's demands. I also suggested that if P&G remained dissatisfied, it should submit its claims to the NAD.

15. Mr. Williams did not submit his complaint to the NAD. Rather, nearly two months after receiving my letter, Mr. Williams filed this lawsuit.

Dated: November 28, 2007

_____
Marc Levy

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 30, 2007, I caused a copy of the foregoing **DECLARATION OF MARC LEVY** to be served upon counsel for The Procter & Gamble Company by the Court's ECF Filing System and by hand delivery to the following individual:

Laura W. Sawyer
**JONES DAY**
222 East 41st Street
New York, New York 10017

**Attorneys for The Proctor & Gamble Company**

Dated: New York, New York
    November 30, 2007

_____
Lina M. Viviano