# Exhibit L

Westlaw.

Slip Copy

Page 1

Slip Copy, 2007 WL 911773 (D.Nev.), 2007-1 Trade Cases P 75,687
**(Cite as: Slip Copy)**

H
IGT v. Alliance Gaming Corp.
D.Nev.,2007.

United States District Court,D. Nevada.
IGT, a Nevada Corporation, Plaintiff,
v.
ALLIANCE GAMING CORPORATION, a Nevada Corporation; Bally Gaming International, Inc., a Delaware Corporation; and Bally Gaming, Inc., a Nevada Corporation d/b/a Bally Gaming & Systems, Defendants.
And Related Counterclaims.
No. 2:04-CV-1676-RCJ-RJJ.

March 22, 2007.

Darin J. Glasser, Nathaniel L. Dilger, O'Melveny & Myers LLP, Newport Beach, CA, Darren Tucker, Ian Simmons, O'Melveny & Myers, Washington, DC, James B. Fairbanks, Rex Garner, Morris Pickering & Peterson, Las Vegas, NV, for Plaintiff.
Amy H. Candido, Charles K. Verhoeven, Jennifer A. Kash, R. Tulloss Delk, Quinn Emanuel Urquhart Oliver & Hedges LLP, San Francisco, CA, Matthew J. Kreutzer, Las Vegas, NV, for Defendants.
J.S. Peek, Hale Lane Peek, et al, Steve L. Morris, Morris Pickering & Peterson, Las Vegas, NV, for Plaintiff/Defendants.

**ORDER**
ROBERT C. JONES, United States District Judge.
*1 This matter comes before the Court on IGT's Motion for Partial Summary Judgment. (# 167.) The Court has considered the Motion, the pleadings on file, and oral argument on behalf of all parties. As discussed below, the Court grants in part and denies in part IGT's Motion.

**INTRODUCTION**

On December 12, 2004, Plaintiff IGT filed with this Court its Complaint (# 1) for patent infringement against Defendants Alliance Gaming Corporation, Bally Gaming International, Inc., and Bally Gaming, Inc.'s (collectively "Bally"). In its Complaint, IGT alleges six separate infringement counts for six different patents: Patent No. 6,827,646 (the " 646 patent"); Patent No. 5,848,932 (the " 932 patent"); Patent No. 5,788,573 (the " 573 patent"); Patent No. 5,722,891 (the " 891 patent"); Patent No. 6,712,698 (the " 698 patent"); and Patent No. 6,722,985 (the " 985 patent"). On January 21, 2005, Bally filed its Answer and fourteen counterclaims: (1) declaratory judgment of noninfringement, invalidity, and unenforceability of the 646 patent; (2) declaratory judgment of noninfringement, invalidity, and unenforceability of the 932 patent; (3) declaratory judgment of noninfringement, invalidity, and unenforceability of the 573 patent; (4) declaratory judgment of noninfringement, invalidity, and unenforceability of the 891 patent; (5) declaratory judgment of noninfringement, invalidity, and unenforceability of the 698 patent; (6) declaratory judgment of noninfringement, invalidity, and unenforceability of the 985 patent; (7) monopolization of the gaming machine and wheel game markets in violation of 15 U.S.C. § 2; (8) attempted monopolization of the gaming machine and wheel game markets in violation of 15 U.S.C. § 2; (9) monopolization of the gaming machine and wheel game markets in violation of Nevada law; (10) attempted monopolization of the gaming machine and wheel game markets in violation of Nevada law; (11) violation of the Lanham Act; (12) "Walker Process" violation; (13) violation of Nev.Rev.Stat. 598A.210 ; and (14) intentional interference with prospective business advantage. Plaintiff and counterclaim Defendant IGT now seeks partial summary judgment as to counterclaims seven through fourteen.

**BACKGROUND**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 2

Slip Copy, 2007 WL 911773 (D.Nev.), 2007-1 Trade Cases P 75,687
**(Cite as: Slip Copy)**

IGT is a global company specializing in the design, development, manufacturing, distribution, and sales of computerized gaming machines and system products. Bally, one of IGT's chief competitors, is a diversified, worldwide gaming company that designs, manufactures, operates, and distributes gaming machines and computerized monitoring systems for gaming machines, owns and operates a significant installed base of gaming machines, and owns and operates a casino.

Among IGT's most successful products is its " Wheel of Fortune" slot machine, which includes a bonus wheel feature located in the gaming machine top-box. According to IGT, the "Wheel of Fortune" game, along with "Wheel of Gold," an earlier game that IGT produced, has been on the market for over a decade. IGT asserts that beginning in 2002, Bally began selling wheel games that compete with the " Wheel of Fortune," "Wheel of Gold," and other IGT products. These competing games include " Monte Carlo," "Lucky Wheel," "Cash Wheel," " Playboy Get Lucky," "Fortune Finder," "Party Spin, " "Diamond Sevens," and "Dragon Wheel." Because IGT claims that these competing games infringe upon IGT's patents, it commenced this patent infringement suit in December 2004 to stop what it calls "Bally's willful disregard for IGT's intellectual property rights."(# 172 at 4.)

**\*2** Bally has filed counterclaims alleging, *inter alia,* that IGT fraudulently procured several patents that it knew were invalid. According to Bally, IGT sued Bally for infringing these invalid patents. Bally argues that IGT's "behavior in the wheel game market is that of a monopolist."(# 365 at 6.) Specifically, Bally alleges that IGT uses its dominant market position to eliminate competitors from the wheel game market by acquiring patents, some of which Bally argues IGT knows are invalid, and then threatening companies with infringement allegations to impede the "would-be competitors" from entering the wheel game market.[FN1] Bally further claims that IGT has attempted to use these invalid patents to eliminate its only real competition, Bally, from the wheel game market. Bally asks this Court to find that IGT's alleged enforcement of invalid patents is actionable, anticompetitive conduct.

FN1. Bally argues that the "Wheel Game Market" is a sub-market of the "Gaming Machine Market." To establish a valid antitrust violation, the claimant must indicate the relevant market for which it bases its claims. IGT has not argued that the wheel game sub-market is inappropriate. Neither party contends that the relevant market in this case should be a market other than the wheel game market.

IGT asks the Court to grant it summary judgment on Bally's antitrust counterclaims because Bally cannot establish antitrust injury-an essential element to an antitrust claim. IGT also argues that Bally cannot demonstrate harm to competition or to the wheel game market. IGT also asks the Court to grant summary judgment on Bally's Lanham Act claim because Bally cannot demonstrate that IGT acted with the requisite bad faith.

On October 30, 2006, the Court held a hearing on IGT's Motion for Partial Summary Judgment and Bally's Rule 56(f) Motion asking the Court to stay its decision on IGT's Motion. The Court granted Bally's Rule 56(f) Motion and provided Bally with sixty days in which to gather more evidence to support its claims. During that hearing, with regards to Bally's antitrust counterclaims, the Court granted Bally's Motion and stated the following:
I'll give you 60 days. And then file your response. I think you're partly right that maybe you've carried the day sufficiently to avoid summary judgment by your citation of the Aristocrat, Multimedia, CDS examples, in combination with your own attorneys' fees, but I am also half inclined to accept counsel's argument that you do have to show a monopoly created by these, quote-unquote, "false patents" and antitrust behavior in relation to that monopoly effect to show then a causal injury, caused injury.
(# 370-2 at 20.) Bally has now provided the Court with its "Proffer of Evidence Pursuant to the Court's November 21, 2006 Order" (# 365) wherein it claims to have provided sufficient evidence to satisfy the Court's request.

**DISCUSSION**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                         Page 3

Slip Copy, 2007 WL 911773 (D.Nev.), 2007-1 Trade Cases P 75,687
**(Cite as: Slip Copy)**

IGT argues the Court must grant its Motion for Partial Summary Judgment because the undisputed facts render Bally's counterclaims VII through XIV unsustainable. First, IGT claims that Bally cannot produce any evidence it has suffered an "antitrust injury" to support its monopolization, attempted monopolization, and unfair business practices counterclaims under federal and state law (Counts VII through X) because (1) Bally released it from the alleged antitrust claims, and (2) Bally has no evidence it suffered any antitrust injuries. Second, IGT argues that Bally's counterclaims alleging false advertising under the Lanham Act (Count XI) and intentional interference with prospective economic advantage (Count XIV) are substantively deficient because Bally has not produced any evidence that the alleged false statements were either false or misleading, that any customers were actually deceived, or that the statements caused Bally to suffer any damages.

### I. Summary Judgment Standard

*3 Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). The purpose behind summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the Court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.,* 18 F.3d 1468, 1471 (9th Cir.1994). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995).

The moving party bears the burden of informing the court the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### II. Bally's Antitrust Counterclaims Based on Section 2 of the Sherman Act

Under § 2 of the Sherman Act, it is unlawful for any person to "monopolize, or attempt to monopolize, or combine to monopolize any part of trade or commerce."15 U.S.C. § 2. Not all monopolies or attempts to form monopolies are illegal, and a monopoly which arises from enforcing a valid patent is a well-established example of legitimate monopoly power. *See, e.g., Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 834, (1950). In general, procuring a patent does not constitute an antitrust violation. In addition, a party does not violate the Sherman Act by bringing a patent infringement action in good faith, even if the patent is ultimately determined to be invalid. *See, e.g., Atari Games Corp. v. Nintendo of Am., Inc.,* 897 F.2d 1572, 1576 (Fed.Cir.1990).

However, misusing patent rights may amount to "willful" or "predatory" misconduct that would render a monopoly or attempted monopoly illegal under § 2. For example, the Supreme Court has stated that "the maintenance and enforcement of a patent obtained by fraud on the Patent Office may be the basis of an action under § 2 of the Sherman Act."*Walker Process Equip., Inc. v. Food Mach & Chem. Corp.,* 382 U.S. 172, 174 (1965). The Ninth Circuit has further held that maintaining monopoly power by prosecuting patent infringement actions in bad faith may give rise to a § 2 violation. *Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1288, 1292-93 (9th Cir.1984) (*"Handgards II"*). In its antitrust counterclaims, Bally alleges § 2 liability by arguing both violations mentioned above-fraud on the PTO and bad faith infringement claims.

#### A. Counts VII and VIII-Bad Faith Infringement Actions

*4 To state a claim for monopolization or attempted monopolization, a plaintiff must establish the following: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) a dangerous probability of success; and (4) causal antitrust injury. *See, e.g.,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy    Page 4

Slip Copy, 2007 WL 911773 (D.Nev.), 2007-1 Trade Cases P 75,687
**(Cite as: Slip Copy)**

*Cost Mgmt. Servs. v. Wash. Natural Gas Co.,* 99 F.3d 937, 949-50 (9th Cir.1996). In addition, to establish § 2 liability on a "bad-faith-enforcement theory," the plaintiff must establish by clear and convincing evidence that the defendant has actual knowledge the patents are invalid. *Handgards II,* 743 F.2d at 1288;*Handgards, Inc. v. Ethicon,* 601 F.2d 986, 994-96 (9th Cir.1979) (*"Handgards I");  Grid Sys. Corp. v. Tex. Instruments, Inc.,* 711 F.Supp. 1033, 1041 (N.D.Cal.1991) (citations omitted).

In its Motion for Partial Summary Judgment, IGT primarily relies on the "antitrust injury" element. Bally claims that its litigation costs qualify as a valid antitrust injury. IGT disagrees. Litigation costs do qualify as a valid antitrust injury for purposes of summary judgment only if Bally can produce sufficient evidence to support a claim that IGT filed this patent infringement action in bad faith and thus violated the antitrust laws. *See Carter v. Variflex, Inc.,* 101 F.Supp.2d 1261, 1270 (C.D.Cal.2000); *see also Rickards v. Belkin,* 783 F.2d 1329, 1335-36 (9th Cir.1986) (stating that litigation costs are cognizable antitrust injury so long as the plaintiff also demonstrates a "serious threat to competition"). Thus, to determine if Bally may maintain its antitrust counterclaims based on an allegation that its litigation costs are a valid antitrust injury, the Court must analyze each element under § 2.

### 1. *Clear and Convincing Evidence of Bad Faith Patent Infringement Prosecution*

Bally alleges that IGT knew the 932 and 646 patents were invalid when they applied for those patents, and when they filed the infringement action against Bally. To survive summary judgment on its bad faith claims, Bally must present evidence sufficient to establish an issue of material fact that IGT knew these patents were invalid. *Handgards II,* 743 F.2d at 1288. Bally offers two main arguments to support its claims that IGT knew the patents were invalid: (1) IGT failed to disclose or acknowledge the patents' true inventors and that the technology in these patents had already been "reduced to practice" ; and (2) IGT misrepresented and failed to disclose prior art to the PTO examiner.

#### *a. Prior Reduction to Practice and True Inventors*

When a prior inventor reduces to practice the claimed invention, the claimed invention in a subsequent patent is invalid. 35 U.S.C. § 102(g). Bally argues that IGT knew the 932 and 646 patents were invalid because they had already been "invented." On September 23, 1994, William R. Adams, the named inventor on the 932 and 646 patents, filed an application for a U.S. Patent entitled "Slot Machine with Mechanical Bonus Indicator."The PTO assigned this application the serial number 311,783 (the " 783 Application"). The proposed concept in the 783 Application was to modify a standard slot machine by adding an additional wheel that would spin if the standard reels landed on specific symbols. A bonus would be awarded to a player depending on the wheel's position when it stopped. According to Bally, the only independent claim in the 783 Application provides the following:

**\*5** A slot machine comprising:
means for receiving a wager; a plurality of rotatable reels, each of said reels comprising a plurality of indicia, wherein said rotatable reels are caused to rotate after a wager has been placed and subsequently stop thereby displaying a plurality of said indicia; means for generating a plurality of signals corresponding to a plurality of displays of said indicia; means for providing a winning payout, said payout providing means responsive to said signal generating means; a mechanical, movable bonus payout indicator for visually indicating one of a plurality of bonus payouts to a player, said bonus payout indicator operatively connected to said signal generating means such that said bonus payout mechanism will only operate if said signal generating means has generated a signal corresponding to one of a preselected plurality of bonus reel displays.

(# 25 at 13.)

Nothing in the 783 Application described a game having a primary and secondary unit, with the bonus

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.