# Exhibit O

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1989 WL 94338 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

C
Linotype Co. v. Varityper, Inc.
S.D.N.Y.,1989.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
LINOTYPE COMPANY, Plaintiff,
v.
VARITYPER, INC., Defendant.
No. 89 CIV. 4747 (MJL).

Aug. 4, 1989.

Shearman & Sterling, New York City by Werner L. Polak, for plaintiff.
Seyfarth, Shaw, Fairweather & Geraldson, New York City by Michael L. Hirschfeld, for defendant.

### OPINION AND ORDER
LOWE, District Judge.

*1 Plaintiff Linotype Company has brought a false advertising claim against defendant Varityper, Inc. pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York General Business Law §§ 349, 350. Linotype moves for a preliminary injunction. After a hearing and due consideration of all other pleadings submitted on the motion, including Varityper's Response to Plaintiff's Requests for Admission, we grant the injunction.

### BACKGROUND

Linotype and Varityper sell competing laser imagesetters, or printers, in interstate commerce. These machines use lasers to write text and graphics on paper, and are used in the publishing industry.

In or about May 1989, Varityper began running an advertisement in nationally circulated trade magazines. A copy of the ad is attached as Exhibit A. The ad features a photograph of a trash basket containing a discarded Linotype purchase/license agreement. The agreement names as purchaser/licensee Sun Graphics & Publications, Inc. of Ypsilanti, Michigan. The items listed on the agreement are a Linotype "L300 Recorder" with a " PostScript RIP3". The L300 is the imagesetter. The RIP3 is sold with the L300. "RIP" is an acronym for "raster image processor"; in essence, it translates information written in the PostScript computer language into a language that the L300 can understand.

The text of the ad states that Ralph Volk, the President of Sun Graphics & Publications, " cancelled Linotype for a Varityper PostScript Imagesetter" after making "head-to-head comparisons between Linotype and Varityper PostScript imagesetters for the same jobs."

Linotype claims this ad is false for three reasons. First, Mr. Volk never had or cancelled a purchase agreement with Linotype, contrary to what is depicted by the photograph of the purchase agreement in the trash can.

Second, no comparison was ever made between Linotype's L300 with RIP3 and a competing Varityper machine. According to Linotype, Mr. Volk never tested the L300 with RIP3. He did test, in January 1988, an early production model of the L300 with the RIP2. However, substantial modifications were made to the L300 in October 1988. Furthermore, the RIP3 was not introduced into the marketplace until March 1989. Thus, the Linotype equipment referred to in the advertisement was significantly different from that tested by Volk in January 1988. Linotype contends that Varityper was aware of this fact when it decided to run the ad in May 1989.

Third, no "head-to-head" comparison was made between the L300 with RIP3 and Varityper equipment. The term "head-to-head comparison" as used in the advertising trade, according to Linotype, describes controlled conditions in which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                        Page 2
Not Reported in F.Supp., 1989 WL 94338 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

competing products are tested by performing the same tasks. Here, however, there could not have been any such comparison because (a) the L300 and RIP3 were never tested by Volk, and (b) the Varityper 4300, which the ad says Volk now uses, was not available in the market until September 1988, almost 9 months after Volk tested Lintotype's equipment.

*2 Linotype claims that the ad has caused and is now causing it irreparable harm. In support of this contention, Linotype offers, along with its other evidentiary submissions, an internal Varityper memorandum claiming that the ad has produced "a lot of leads...."

Linotype asks us to now preliminarily (a) enjoin Varityper from using the ad in any manner designed to promote the sale of Varityper products, and (b) order corrective advertising to alleviate the injury caused.

## DISCUSSION

Section 43(a) of the Lanham Act reads in part as follows:

Any person who shall ... use in connection with any goods or services ... a ... false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person ... who believes that he is or is likely to be damaged by the use of any such false description or representation.[FN1]

The standard for issuing a preliminary injunction or temporary restraining order under this statute is the same as it is generally in this Circuit: the moving party must show (a) a risk of irreparable harm and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *McNeilab Inc. v. American Home Products Corp.,* 848 F.2d 34, 37 (2d Cir.1988); *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 314-15 (2d Cir.1982). Irreparable harm is presumed if the contested ad is a false comparison between competing products, since a "misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer." *McNeilab,* 848 F.2d at 38. A likelihood of success is, of course, also established by showing that the contested ad is false. *Coca-Cola,* 690 F.2d at 317. If the ad is literally or explicitly false, "the court may grant relief without reference to the advertisement's impact on the buying public." *Id.*

Here, there can be no doubt as to the explicit falsity of the advertisement along the lines claimed by Linotype. Testimony at the hearing established the following: (a) that Mr. Volk never cancelled a purchase order for any Linotype equipment; (b) that he never tested the L300 with the RIP3; and (c) that he did not perform any "head-to-head" comparison-that is, a comparison of competing products under variable-controlled conditions [FN2] -between any Linotype equipment, including the L300 and RIP3, and the Varityper 4300; indeed, the Varityper 4300 did not appear on the market until September 1988, nearly 7 months after he tested Linotype's equipment, and approximately 3 months after that equipment was removed from the test site. Furthermore, testimony at the hearing revealed that the L300 with the RIP3 became operational in March 1989, two months prior to the appearance of Varityper's disparaging advertisement, and was significantly improved in terms of speed and quality over the equipment tested by Mr. Volk in 1988. *See* July 26, 1989 Hearing Transcript at 12-38.

*3 We have carefully considered Varityper's arguments and find them unpersuasive. Varityper has failed to present any evidence to contradict our conclusion that the article falsely and misleadingly compares competing products. Thus, Linotype is entitled to injunctive relief.

In deciding what form that relief should take, "the court has broad discretion to determine the appropriate remedy." *National Geographic Society v. Conde Nast Publications,* 687 F.Supp. 106, 110 (S.D.N.Y.1988). *Cf. Perfect Fit Industries, Inc. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 3

Not Reported in F.Supp., 1989 WL 94338 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*Acme Quilting Co.,* 646 F.2d 800, 806 (2d Cir.1981) (affirming issuance of recall of offending goods). The relief ordered should be oriented toward eliminating the false nature of the offending advertisement, as well as the confusion it engenders in the minds of consumers. *Burndy Corp. v. Teledyne Industries, Inc.,* 748 F.2d 767, 772 (2d Cir.1984). *See Levitt Corp. v. Levitt,* 593 F.2d 463, 469 (2d Cir.1979) ("it is beyond cavil that a district court may devise a remedy that ... is necessary to make the injured parties whole"). Corrective advertising may be ordered where appropriate. *Ames Publishing Co. v. Walker-Davis Publications, Inc.,* 372 F.Supp. 1 (E.D.Pa.1974).

We believe that an adequate remedy here requires both an end to the circulation of the offending advertisement, and some form of corrective advertising. Counsel for Varityper has represented that the offending ad "has run its course." July 19, 1989 Hearing Transcript at 6. However, he does not state that the ad will not run again. Further, Linotype's counsel asserts that copies of the ad are currently being used by Varityper sales agents in the field, and that Linotype has lost at least one sale as a result. *Id.* at 15-16. Accordingly, in order to terminate dissemination of the falsehoods in the ad, Varityper is hereby preliminarily enjoined from using the subject advertisement in any manner designed to promote the sale of defendant's products. This includes, but is not limited to, any use of copies of the ad by salespeople in efforts to attract customers.

Furthermore, in order to counteract the false impression that may have been placed by the ad in consumer's minds, Varityper shall publish a corrective advertisement. The corrective ad is to be placed, as soon as possible, in the same publications in which the offending ad appeared, for the same number of consecutive issues, and in the same size and frequency as that of the offending ad. The substance of the corrective ad shall read as set forth in the attached Exhibit B.

It Is So Ordered.

*EXHIBIT A*

TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE    TABLE

*EXHIBIT B*

REPRODUCTION

OF

ADVERTISEMENT

*A CLARIFICATION*

The above reproduction of a Varityper, Inc. advertisement ran in this publication on _____. The advertisement made several incorrect representations about Linotype products. In fact, (1) Mr. Volk neither had nor cancelled a purchase/license agreement for a Linotype PostScript imagesetter, (2) Mr. Volk did not test Lintotype's current PostScript imagesetter-a Linotronic 300 with a RIP3, and (3) Mr. Volk performed no "head-to-head" comparisons of the Linotype and Varityper PostScript imagesetters depicted in the advertisement.

*4 We regret these inaccuracies and recommend that any consumer considering the purchase of a PostScript imagesetter based upon the statements in the former advertisement speak with representatives of both Linotype and Varityper and accurately evaluate each company's products.

FN1. Note that the elements of a claim under NY GBL §§ 349, 350 are similar to those under § 43(a) of the Lanham Act. *See Proctor & Gamble Co. v. Cheeseborough Pond's, Inc.,* 588 F.Supp. 1082, 1083 n. 4 (S.D.N.Y.), *aff'd,* 747 F.2d 114 (2d Cir.1984).

FN2. Counsel for Varityper has not shown that Linotype's witness, Mr. Summers, is unqualified to testify as to what is a "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1989 WL 94338 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

    head-to-head" comparison as understood in the industry. July 26, 1989 Hearing Transcript at 32-38.

S.D.N.Y.,1989.
Linotype Co. v. Varityper, Inc.
Not Reported in F.Supp., 1989 WL 94338 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.