UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE PROCTER & GAMBLE COMPANY,

                Plaintiff,

-v-                                              No. 07 Civ. 8379 (RJS)

ULTREO, INC.,                               MEMORANDUM AND ORDER

                Defendant.

---

RICHARD J. SULLIVAN, District Judge:

      The Procter & Gamble Company ("P&G") has sued a rival toothbrush manufacturer, Ultreo, Inc. ("Ultreo"), for false advertising under the Lanham Act, 15 U.S.C. § 1125 *et. seq.*, and the New York Consumer Protection Act, New York General Business Law §§ 349(a), 349(h), 350, 350(a), and 350(e). Specifically, P&G challenges Ultreo's claim that its power toothbrush cleans beyond the reach of the toothbrush's bristles by virtue of its high-speed sonic bristle action and ultrasound wave technology. According to P&G, such claims are misleading in that they are based exclusively and, in P&G's view, improperly, on laboratory studies rather than clinical studies involving human subjects. As part of this action, P&G seeks the disclosure of five scientific studies (the "Studies") conducted by Ultreo and its research affiliates. Ultreo has refused to disclose the Studies on the grounds that they are privileged attorney work product. For the reasons stated below, the Court rejects Ultreo's work-product claim and orders Ultreo to produce the Studies.

I.      Background

After filing the complaint in this action on September 27, 2007, P&G moved for a preliminary injunction on October 26, 2007. Expedited discovery for the preliminary injunction commenced immediately, subject to an expedited discovery scheduling order endorsed by the Court and filed on November 5, 2007. The instant dispute was brought to the attention of the Court on December 18, 2007, by letter dated December 17, 2007. Marc Levy, attorney for Ultreo, provided the Court with an *ex parte* affidavit in support of Ultreo's privilege claim on December 20, 2007. (*See* Levy Affidavit of December 14, 2007 ("Levy Aff.").) The preliminary injunction hearing began on December 19, 2007, and after being adjourned on December 20, 2007, will resume on January 10, 2008.

At issue in the instant dispute are the protocols, data, and results of the Studies investigating the efficacy of Ultreo's new power toothbrush. Ultreo argues that these documents are privileged as attorney work product. In support of that claim, Mr. Levy attests that he advised Ultreo to conduct the Studies because of the likely prospect of litigation from P&G. (Levy Aff. ¶ 5.) By letter dated December 28, 2007, but not received by the Court until January 2, 2008, Ultreo also provided the Court with copies of the Studies for *in camera* inspection. "Making an *in camera* submission of materials that counsel contends are privileged is a practice both long-standing and routine in cases involving claims of privilege." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) (internal quotation omitted); *accord In re Grand Jury Subpoena*, No. 05-6891-cv, 2007 U.S. App. LEXIS 28479, at *9 (2d Cir. Nov. 16, 2007). On January 2, 2008, P&G submitted a letter to the Court responding to Ultreo's arguments. (*See* Laura W. Sawyer Letter

of January 2, 2008 ("Sawyer Letter").)  The Court has carefully reviewed the submissions of both parties.

Ultreo argues that the Studies are privileged because (1) they were commenced at the direction of Mr. Levy because of the prospect that P&G would sue Ultreo (*see* Levy Aff. ¶¶ 5-7), and (2) the privilege of attorney work product extends to investigators seeking factual information, such as clinical study results (*see* Anthony DiSarro Letter of December 28, 2007 ("DiSarro Letter")). In response, P&G contends that the Studies were part of Ultreo's business plan from its inception and are no different from the discoverable studies that Ultreo produces in the routine course of business, several of which have been turned over to Plaintiff in this litigation.  (*See* Sawyer Letter at 2.) Accordingly, P&G argues that the Studies are not shielded as attorney work product.

II.    The Attorney Work Product Privilege Does Not Shield the Studies

Federal Rule of Civil Procedure 26(b)(3) sets out the requirements for shielding documents or other material under the attorney work product privilege.  The rule states that "documents and tangible things . . . prepared in anticipation of litigation or for trial or for another party or by or for that other party's representative" are discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3).  "The attorney work product doctrine 'provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial.'" *In re Grand Jury Subpoena*, 2007 U.S. App. LEXIS 28479 at *6 (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 383).  The rule requires the Court to

"protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney" concerning the litigation. Fed. R. Civ. P. 26(b)(3). "[T]he party invoking the privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d. at 384.

Both facts and opinions are protected by the work product privilege. *See Doe v. United States (In re Grand Jury Subpoena Dated October 22, 2001)*, 282 F.3d 156, 161 (2d Cir. 2002). The Second Circuit has noted that "[w]hile it may well be that work product is more deeply concerned with the revelation of an attorney's opinions and strategies, and that the burden of showing substantial need to overcome the privilege may be greater as to opinions and strategies than as to facts, *see* Fed. R. Civ. P. 26(b)(3)," there is "no reason why work product cannot encompass facts as well." *Doe v. United States (In re Grand Jury Subpoena Dated October 22, 2001)*, 282 F.3d at 161. The work product privilege applies not only to lawyers, but also to "other types of party representatives including, for example, investigators seeking factual information." *Id.*; *see* Fed. R. Civ. P. 26(b)(3). As a threshold matter, therefore, it is clear that the factual nature of the clinical studies does not, by itself, destroy a potential work product privilege.

Nevertheless, for facts to be protected by the work product privilege, the party seeking to assert the privilege must demonstrate that they were created "by or for counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d. at 383. The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his [or her] adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting

4

*Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). Accordingly, the law in this Circuit is clear that "the work product doctrine does not extend to documents in an attorney's possession that were prepared by a third party in the ordinary course of business and would have been created in essentially similar form irrespective of any litigation anticipated by counsel." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d. at 384-85; *see also Adlman*, 134 F.3d at 1202. Thus, "[i]n order to win protection for a particular document, the party seeking such protection must prove that it 'was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation.'" *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, No. 04 Civ. 1966 (DLC), 2005 WL 1678001, at *2 (S.D.N.Y. July 19, 2005) (quoting *Adlman*, 134 F.3d at 1195) (emphasis omitted).

The question for the Court is, therefore, whether Mr. Levy's affirmation that the Studies were conducted at his request in anticipation of litigation is sufficient to shield them from discovery. The Court finds that it is not. The record is clear that Ultreo has long sought to obtain clinical proof of the effectiveness of the ultrasound component of its toothbrush. In a 2005 grant application to the National Institute of Health, Ultreo detailed the need for clinical evidence and was, ultimately, awarded research funds to conduct clinical studies. (Preliminary Injunction Hr'g. Tr. 293; 298-99; *see also* NIH Grant Application, Pl.'s Ex. 18.) Ultreo's Professional Marketing Plan, dated February 2006, included additional clinical studies as a strategy to address the likely response of competitors to the new Ultreo toothbrush. (Ultreo Professional Marketing Plan, Pl.'s Ex. 31.) On March 28, 2006, Ultreo's Vice President, John Tubbs, noted in an email that Ultreo has "played a bit of a high stakes game in terms of planning on coming out of the gate at relatively high volume and presuming

success on the clinical side." (Tubbs Email of March 28, 2006, Pl.'s Ex. 25.) He went on to state that the company would "obviously prefer to have strong in-mouth clinicals" as well as laboratory studies. (*Id.*)

In 2007, as Ultreo continued to seek clinical support for its advertising claims, the record shows that Ultreo's CEO, Jack Gallagher, did not differentiate between the studies now withheld as work product and Ultreo's routine clinical studies that were to be used for commercial purposes. In a January 2007 letter, Mr. Gallagher promised Ultreo shareholders that Ultreo was planning to conduct clinical and laboratory studies "to define the synergistic ability of the combination of sonic bristle action and ultrasound technology to remove plaque bacteria and enhance cleaning in the oral cavity." (*See* Gallagher Email of January 31, 2007, ULTREO_00009608-09.) At the preliminary injunction hearing, Mr. Gallagher testified that his reference in that January letter could have included the Studies as well as other ongoing research. (Tr. 339.) Mr. Gallagher also noted that the clinical studies referenced in his January letter would have been used in connection with the commercial selling of the product. (Tr. 339.) In an April 25, 2007 email to co-workers, Mr. Gallagher again noted that clinical results were necessary to demonstrate the efficacy of the Ultreo toothbrush, and made no reference to the need to conduct such studies in anticipation of litigation. (Tr. 329; Pl.'s Ex. 85.) Finally, in the fall of 2007, Mr. Gallagher reiterated the need for clinical studies in connection with the marketing of the product to retailers. (Tr. 355; Gallagher Dep. 192:2-11.) In his deposition, Mr. Gallagher clarified that the studies discussed with retailers were the same studies that are being withheld as work product. (Gallagher Dep. 192:2-11.)

On this record, Ultreo has not met its burden to show that the studies "would not have been prepared in substantially similar form but for the prospect of that litigation." *Adlman*, 134 F.3d at 1195. As recounted above, the record shows that clinical and laboratory studies were a core element of Ultreo's business plan. Clinical research continued to be a crucial element of Ultreo's business throughout 2006 and 2007. And Ultreo's CEO, in both his internal communications with coworkers and in his external communications with shareholders and retailers, included the Studies in his references to Ultreo's routine clinical research.

An *in camera* review of the Studies further supports the conclusion that they were part of Ultreo's routine business efforts to achieve substantiation for their advertising claims. While the documents are marked confidential, there is no indication on the face of the documents that the studies are distinguishable from those that were — or would be — conducted irrespective of litigation. (*See, e.g.*, Def.'s Ex. 30-32, 45-47.) In fact, a review of the other studies in evidence reveals that they are virtually indistinguishable from the Studies that are the subject of the instant dispute. Nor has Ultreo made any showing of what distinguishes the Studies from those that have already been produced in this litigation. Thus, even if the Studies might assist Ultreo in preparation for litigation — and there is no doubt that, were they successful, the Studies would have been used for that purpose — they do not qualify for protection because it cannot "fairly be said that they were created 'because of' actual or impending litigation." *Adlman*, 134 F.3d at 1303. Nor can it be said that the Studies "would not have been prepared in substantially similar form but for the prospect of that litigation." *Adlman*, 134 F.3d at 1195.

There is no doubt that Mr. Levy, as early as December 5, 2006, concluded that a legal challenge by P&G to Ultreo's advertising was likely, and agreed that two investigations were necessary to bolster existing laboratory support for Ultreo's advertising claims. (Levy Aff. ¶¶ 4-5.) Mr. Levy was later involved in more specific conversations about the scope and nature of these two initial investigations. (Levy Aff. ¶ 7.) Over time, as the prospect of litigation became a reality, Mr. Levy was involved in the decision to commission an additional three studies. (Levy Aff. ¶¶ 10-11.)

Nevertheless, the question is not whether the studies were conducted at the request of counsel. Instead, the law requires that, for the Studies to be privileged as work product, Ultreo must show that the studies "would not have been prepared in substantially similar form but for the prospect of that litigation." *Adlman*, 134 F.3d at 1195. To hold that the Studies are protected as work product would exceed the limits of the doctrine. Ultreo's business plan was built around developing a new and innovative toothbrush, and conducting scientific investigations to demonstrate that the toothbrush worked. The fact that these investigations were undertaken in consultation with outside counsel, under the looming specter of litigation, does not, by itself, clothe them with protection. *See Takeda Chem. Indus.*, 2005 WL 1678001, at *4 (denying work product protection to patent searches, even though attorney advice was obtained, since the defendant regularly conducted patent searches in the course of its business); *see also Allied Irish Banks v. Bank of America*, 240 F.R.D. 96, 107-09 (S.D.N.Y. 2007) (denying work product protection to an investigation conducted by an attorney where public statements had been made in connection with the investigation and there were business reasons for the internal investigation). Such a holding would effectively shield every clinical investigation and scientific inquiry, so long as the party was

8

savvy enough to include outside counsel in the decision-making process. Such formalism is precisely what the Second Circuit rejected in *Adlman*.

III.   Conclusion

For these reasons, the Court holds that Ultreo has failed to meet its burden to show that the five studies being withheld are shielded by the work product privilege. P&G's request to compel Ultreo to disclose the protocols, data, and final results of the studies is hereby GRANTED. Ultreo is hereby ORDERED to produce the Studies to P&G.

SO ORDERED.

Dated:     January 8, 2008
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

9