

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

THE PROCTER & GAMBLE COMPANY,            )
                                         )
               Plaintiff,    )   Civ. No. 07-8379 (RJS)
                                         )
               v.           )   ECF Case
                                         )
ULTREO, INC.,                            )
                                         )
               Defendant.    )

----------------------------------------------------------x

## SUPPLEMENTAL DECLARATION OF JACK GALLAGHER

I, JACK GALLAGHER, hereby declare under penalty of perjury as follows:

1.    I submit this supplemental declaration (which has been marked as DX-200) to address: (a) PX 132, a document reflecting weekly sales that was created and produced by Ultreo during discovery in this action; and (b) PX 59 which is the *SkyMall* ad.

2.    PX 132 purports to reflect the number of "dispensing units" and "trial units" sold by Ultreo to dental professionals on a weekly basis.  "Dispensing units" are units sold to dental professionals for resale to patients.  In contrast, as I explained at the hearing, "trial units" are sold to dental professionals at a deep discount for their own use (Tr. at 419-20).  This distinction is relevant because while it can plausibly be asserted that the sale of a dispensing unit displaces a potential sale to that patient by an Ultreo competitor, the same cannot reasonably be said with respect to the sale of a trial unit to a dental professional for his or her own use.  Dental professionals purchase trial units so that they can try out the product and compare it with competing power toothbrushes (Tr. at 420; *see also* Tr. at 62-63).

3.    Unfortunately, PX 132, which was a document that Ultreo prepared and produced to P&G in response to a discovery request in this litigation, is inaccurate in that the number of dispensing units reported as sold is too high and the number of trial units reported as sold is too

low. I testified to the inaccuracy at the hearing (Tr. at 447) and the basis for my testimony was that I had reviewed on a regular basis sales information regarding dispensing and trial units sold to professionals (Tr. at 447-50). While my testimony regarding the inaccuracy of the dispensing and trial unit sales data on PX 132 was and is correct, my testimony was mistaken to the extent I said that the correct sales information was contained in the Company's internal financial statements which I reviewed from time to time (Tr. at 448-50). As it turns out, unit sales information is not reflected in Ultreo's internal financial statements. Instead, this sales information was printed out from the Company's Navision financial accounting software and given to me by Ultreo personnel for my review, along with the Company's regular financial statements.

4.    Since the hearing, I have looked into how PX 132 was created. PX 132 was prepared by Tim Driggers, Ultreo's former IT Operations Manager. Mr. Driggers left Ultreo's employ in November 2007, prior to the hearing in this case. PX 132 fails to accurately identify and record unit sales as reflected in the Navision financial reporting system.

5.    I did not review PX 132 prior to Ultreo's producing it during discovery, and I regret not having done so. Moreover, the error did not come to light during discovery because at no point was the document used or introduced at my deposition. Nor did I make reference to the exhibit in my Direct Examination Declaration. In this regard, I would note that when P&G initially moved for a preliminary injunction, it contended that the Coulter Renken Study represented P&G's estimate of injury from Ultreo's allegedly false advertising. (*See* Randall Decl., dated Oct. 18, 2007, ¶ 23; P&G's Moving Brief, dated Oct. 26, 2007, at 24). However, when P&G filed its pre-hearing filings on December 12, 2007, P&G changed its position, claiming that the Coulter Renken Study estimated Ultreo's sales from *lawful competition* and thus that any actual sales in excess of that amount would constitute sales from allegedly false

advertising. (*See* Randall Supp. Decl., dated Dec. 12, 2007, ¶¶ 5-6, 8). It was at this point that Ultreo's actual sales and, particularly, its actual sales of trial versus dispensing units became pertinent.

6. Nevertheless, I apologize to the Court and to P&G for the fact that PX 132 was inaccurate. We have taken several steps to remedy this error.

7. First, we produced at the hearing PX 159, which was a summary page document of the correct number of aggregate trial and dispensing unit sales through December 31, 2007.

8. Second, we produced at the hearing the underlying source data from which PX 159 was prepared. This data is from Ultreo's Navision financial reporting system software so that P&G can determine for itself the number of trial and dispensing units sold by Ultreo.

9. Third, we produced to P&G at the hearing the financial statements that I mentioned during my testimony. Even though these documents do not report sales by units, we produced them in any event so that P&G could confirm this fact for itself.

10. Fourth, we have now produced a corrected version of PX 132 in the same weekly format as the original exhibit and have formally supplemented Ultreo's discovery responses to correct the error. The corrected version of PX 132, which we have marked as DX 195, also includes sales information through the December 31, 2007 year-end, as P&G's counsel had requested. I attach a copy of DX 195 hereto as Exhibit A.

11. Fifth, we have provided a declaration by Ultreo's Chief Financial Officer, Richard Denmark, attesting to the accuracy of the information in the new DX 195, and confirming that the information reflected in PX 132 is not accurate and explaining the basis for that conclusion. Mr. Denmark's declaration is annexed hereto as Exhibit B, and has been marked as DX 196.

12. I would also like to address the *SkyMall* advertisement that has been marked as PX 59.

13.    Although the *SkyMall* ad was included as an exhibit to the hearings, it was not the subject of any testimony at the December 19 or 20 hearing sessions, nor was it raised in the opening statements on December 19. The first time it was mentioned in Court was on January 10. On January 9, the Court requested P&G to produce a chart showing the claims that P&G was requesting be enjoined (Tr. at 439-40), and P&G produced the chart on January 10, shortly before the closings (Tr. at 770). The Court made reference to this chart during its questioning of Dr. Biesbrock, a rebuttal witness (Tr. at 770) and during the closings (Tr. at 809-16).

14.    Specifically, the Court referenced the following statement in the *SkyMall* ad: "The sonic bristles create bubbles that pulsate at an exact ultrasonic frequency for optimum plaque removal" (Tr. at 861). The Court indicated that it considered the claim to be a beyond-the-bristles claim made to consumers (Tr. at 862-63).[1]

15.    While I do not necessarily agree that the sentence is a beyond-the-bristles claim, I am sensitive to the Court's concerns and we have contacted Frontgate, Inc., the entity that created, placed, and paid for, the *SkyMall* ad, and requested that Frontgate delete this sentence from the ad. Frontgate agreed to do so at the earliest opportunity which is June 2008. Consequently, the sentence at issue will no longer be used in the ad. The fact that Frontgate is the advertiser of the Ultreo toothbrush ad in the *SkyMall* magazine is readily apparent from the placement of the ad in the Frontgate section of the *SkyMall* magazine. A copy of the Frontgate section of the current "Early Spring 2008" *SkyMall* magazine (cover, table of contents and pages 20-21), is attached as Exhibit C to this declaration and has been marked as DX 199.

---

[1]    Dr. Biesbrock questioned the use of the word "optimal," but admitted that the sentence was supported because Ultreo "has shown *in vitro* that sonic bubbles can remove plaque off of hydroxyapatite." (Tr. at 770-71).

16.    I would note for the record that the language used in the *SkyMall* ad is Frontgate's, not Ultreo's.  Documents that Ultreo has produced in discovery in this action show that Ultreo proposed language to Frontgate for use in the *SkyMall* ad on two different occasions.  On neither occasion did Ultreo propose the sentence at issue.  Instead, Ultreo's proposed copy read, in pertinent part, as follows:

> The sonic bristles create an optimal population of bubbles for activation by ultrasound which is channeled through a proprietary ultrasound waveguide.

(*See* Ultreo_00016709-10 which has now been marked as DX 197 and annexed hereto as Exhibit D, and Ultreo_00016748-51, which has now been marked as DX 198 and annexed hereto as Exhibit E).  I would further note for the record that the *SkyMall* ad is neither reprinted on, nor accessible from, Ultreo's website.

Dated: January 31, 2008
       Redmond, Washington

_____
        Jack Gallagher

5

# Exhibit A

# REDACTED

**Contains Information Designated As "Confidential"
Pursuant to November 9, 2007 Stipulated
Confidentiality Order In This Action**

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――――――x

THE PROCTER & GAMBLE COMPANY,     :
                                  :
                       Plaintiff, :     Civil Action No. 07-8379 (RJS)
                                  :
          v.                      :
                                  :     DECLARATION OF
ULTREO, INC.,                     :     RICHARD DENMARK
                                  :
                       Defendant. :
――――――――――――――――――――――――x

I, Richard Denmark, hereby declare under penalty of perjury as follows:

1.     I am Chief Financial Officer of Ultreo, Inc. and make this declaration

based on my personal knowledge, except as otherwise indicated.

2.     Mr. Jack Gallagher, Ultreo's Chief Executive Officer asked that I prepare

a report of Ultreo's sales of Ultreo ultrasound toothbrush and brush heads by week for the

year ending December 31, 2007. I asked Mr. Chris Pladsen, Ultreo's Controller, to

prepare this report which I reviewed and believe is accurate.

3.     Attached as Exhibit A to this declaration is the report entitled "Gross Sales

by Item & Week", which I will call "the Report." The Report summarizes unit and

revenue sales of all invoiced shipments of Ultreo ultrasound toothbrushes and brush

heads by week for the year ending December 31, 2007. The Report excludes shipments

to individuals or organizations that were not invoiced and product returns. The source of

the data is the "Item Revenue by G/L Account" report run from the receivables

management module of Navision, Ultreo's enterprise resource planning data system

which tracks financial information and sales of Ultreo products.. The shipment dates

DEFENDANT'S
EXHIBIT
196

were determined by the invoice date associated with each shipment. Invoices are automatically generated the same day as shipments are confirmed within Navision.

4.     The accuracy of the Report has been verified in two ways. First, the revenue results of the Report have been compared to the company's gross product revenue reported in the company's financial statements which Ultreo believes are accurate and have been submitted to the company's lenders and auditors. The revenue results from the Report and the gross product revenue reported in the company's financial statements are comparable.

5.     Second, the unit sales quantities in the report were verified by comparing the average sales price of each core item in the report with the target sales prices of that item into each channel. The results again were comparable.

6.     Mr. Gallagher also provided to me a copy of a report of weekly sales authored by Mr. Tim Driggers, the former Ultreo IT Operations Manager , which I understand was previously provided to Procter & Gamble. A copy of the Driggers Report is attached as Exhibit B. Mr. Gallagher asked me to investigate how the Driggers Report was prepared and to test the Driggers Report for accuracy.

7.     We contacted Mr. Driggers to attempt to find out how his report was created. Mr. Driggers confirmed that the report was based on his query to the Navision database, a data system installed at Ultreo to track financial information and sales on Ultreo products.

8.     However, our review of the Driggers Report determined that there were errors in the data received by Mr. Driggers from the Navision data system. We believe that he failed to formulate the proper system queries and then made arithmetic errors in

2

compiling the data. The errors may have been due to his inexperience with the data system, which was relatively new at Ultreo. Mr. Driggers left Ultreo's employment on November 16, 2007 prior to the commencement of the Court hearings in this case.

9.     We have corrected the errors and have prepared a new, corrected Report which is attached hereto as Exhibit A. Exhibit A was properly compiled from Ultreo's electronic financial data base, which we use here at Ultreo in the ordinary course of business. I personally supervised the compilation of Exhibit A and can vouch for its accuracy.


Dated January 30, 2008
Redmond, Washington

_____
Richard Denmark


3

Exhibit A

# REDACTED

**Contains Information Designated As "Confidential"
Pursuant to November 9, 2007 Stipulated
Confidentiality Order In This Action**

Exhibit B

# REDACTED

**Contains Information Designated As "Confidential"
Pursuant to November 9, 2007 Stipulated
Confidentiality Order In This Action**

**Exhibit C**



DEFENDANT'S
EXHIBIT
199



# SkyMall

## CONTENTS

AccuBanker® . . . . . . . . . . . . . . . . . 100
Active Forever . . . . . . . . . . . . . . . 108
AJ Prindle . . . . . . . . . . . . . . . . . . 118
Art & Artifact® . . . . . . . . . . . . . . . 162
Bodyflux . . . . . . . . . . . . . . . . . . 110
Brookstone® . . . . . . . . . . . . . . . . 166
Design Toscano® . . . . . . . . . . . . . 160
Diversions Catalog . . . . . . . . . . . . 122
Driving Comfort by Autosport . . . 120
Executive Book Summaries® . . . . . . 84
FootSmart® . . . . . . . . . . . . . . . . . 112
Frontgate® . . . . . . . . . . . . . . . . . . 16
Gadget Universe® . . . . . . . . . . . . . 66
get Abstract . . . . . . . . . . . . . . . . . . 7
Gravity Defyer . . . . . . . . . . . . . . . . 12
The Greatest Gift . . . . . . . . . . . . . 102
Hammacher Schlemmer® . . . . . . . . 36
Healthy Connections . . . . . . . . . . 114
Heidi Klum Jewelry NEW! . . . . . . . 125
Improvements® . . . . . . . . . . . . . . . 50
Ion® NEW! . . . . . . . . . . . . . . . . . . 170
LifeLock™ NEW! . . . . . . . . . . . . . . 86
Mobal Communications . . . . . . . . . 99
Montgomery Ward® . . . . . . . . . . . 156
Neat Receipts® . . . . . . . . . . . . . . . 87
The Noble Collection® . . . . . . . . . 126
Polk Audio® . . . . . . . . . . . . . . . . . 14
Rosetta Stone® . . . . . . . . . . . . . . 183
The Sharper Image® . . . . . . . . . . . 30
Signals® . . . . . . . . . . . . . . . . . . . 152
Sit4Less.com . . . . . . . . . . . . . . . . 101
SkyMall Collection . . . . . . . . . . . . 70
Smarthome™ . . . . . . . . . . . . . . . . 158
Solutions® . . . . . . . . . . . . . . . . . . 146
Spencer Forrest NEW! . . . . . . . . . . . 9
Stacks and Stacks™ . . . . . . . . . . . 142
Successories® . . . . . . . . . . . . . . . 134
TigerDirect® . . . . . . . . . . . . . . . . 171
Travelers Selections . . . . . . . . . . . 128

**Plus Many More!**

## Looking for a gift for someone special?

## Give a SkyMall Gift Card!



### Choose $25, $50 or $100

## EARN 15 OR TAKE 15%

**WorldPerks® bonus miles for every dollar you spend on SkyMall merchandise**

**(offer code V32)**

**off your merchandise order of $100 or more**

**(offer code V38)**

Just ask your flight attendant for a special Buy in the Sky order form and indicate your preferred offer on the top of the form. Complete details are included on the Buy in the Sky order form.



**BONUS BOTTLE**
*In The First Shipment!*

SkyMall Bonus Offer: 3 bottles for the price of 2 in the first shipment!

### Discover California's Best Kept Secret... "Mom & Pop" Wineries!

Since 1990, the California Wine Club® has been featuring the best of California's small, family-owned wineries. These "mom & pop" wineries handcraft each limited production wine and the results are award-winning wines that can't be found in local stores! Monthly deliveries include:

- Two bottles of limited production, award-winning wine
- Beautiful, fun and informative 12 page magazine, *Uncorked®*
- Discounts of up to 50% on reorders
- 100% satisfaction guarantee

Please see below for specially discounted prices for our SkyMall customers.

| | | |
|---|---|---|
| 1093A | 1 Mo. Premier Club | $46.95 |
| 98910A | 3 Mo. Premier Club | $136 (Save $6) |
| 98911A | 6 Mo. Premier Club | $270 (Save $12) |
| 98913A | 12 Mo. Premier Club | $528 (Save $35) |

No additional discounts apply





# Exhibit D

# REDACTED

**Contains Information Designated As "Confidential"
Pursuant to November 9, 2007 Stipulated
Confidentiality Order In This Action**

# Exhibit E

# REDACTED

**Contains Information Designated As "Confidential"
Pursuant to November 9, 2007 Stipulated
Confidentiality Order In This Action**